BERNARD SMITH *vs.* MARTIN DELANEY AND WILLIAM McGEE.

First Judicial District, Hartford, March Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The defendant *D* requested the plaintiff to execute, as surety, a liquor license bond with defendant *M*, promising to indemnify him, and also stated to the plaintiff that he, *D*, intended to go into the liquor business with *M*. The plaintiff executed the bond as requested, and thereupon a license was issued to *M*, who carried on the business of selling liquor until his conviction, some months later, of a violation of the liquor law, when the license was revoked and the plaintiff was compelled to pay the amount of the bond. Shortly after the license was issued *D* became a partner with *M* and the business was carried on for their joint benefit; but before *M's* conviction *D* had withdrawn from the partnership. In an action to recover the amount of the bond paid by the plaintiff, which was reserved for the advice of this court, it was *held*:—

1. That the special promise of *D* was not within the statute of frauds.

2. That as *D* might have become interested in the liquor business carried on under the license to *M*, in a legal way, as a silent partner taking no active participation and only concerned to the extent of capital invested, it could not be presumed, on the facts found, that the plaintiff contemplated, or that the parties intended, any illegal connection upon *D's* part with the proposed business.

[Argued March 7th—decided April 2d, 1894.]

ACTION to recover of the defendants the amount of a liquor

license bond paid by the plaintiff; brought to the Court of Common Pleas in Hartford County and tried to the court, *Calhoun, J. ;* facts found and case reserved for the advice of this court. *Judgment advised for plaintiff.*

The amended complaint of the plaintiff was as follows:—

1. On or about the      day of November, 1890, the defendants had agreed between themselves to become partners in the business of selling spirituous and intoxicating liquors in the town of Bristol, and were about to commence to carry on said business as soon as the license required therefor was or might be duly issued.

2. In order for the defendants to secure a license for said business the bond provided by Section 3064 of the General Statutes of this State was required, and the plaintiff upon the special request of the defendants, and in consideration of their joint and several promises to save him, the plaintiff, harmless from any and all loss, cost, or damage thereon, and induced by said request and promise duly executed the bond required together with the defendant McGee.

3. Said license was thereupon duly issued, and said business begun and carried on by said defendants pursuant to their agreement as stated in paragraph 1.

4. On or about the      day of      1891, and during the lifetime of said bond given as aforesaid, the defendant McGee was duly convicted before      justice of the peace within and for the county of Hartford, residing at the town of Bristol, of a violation of the statute law relating to the sale of spirituous and intoxicating liquor by a licensed dealer, and said bond thereupon became and was forfeited.

5. Immediately thereafter, Arthur F. Eggleston, treasurer of said county of Hartford, made demand upon the plaintiff of the amount of said bond, to wit: $300, and the plaintiff was thereupon compelled to pay, and did pay, said treasurer of said county of Hartford, the said sum of $300.

6. Neither of the defendants has ever repaid said sum of $300, or any part thereof to the plaintiff, although often requested and demanded.

The plaintiff claims $400 damages.

The defendant McGee defaulted.

The defendant Delaney demurred to the complaint, assigning the following grounds:

1. It sets forth in but one count two separate and distinct causes of action, namely: One cause of action against the defendant, William McGee, to recover for money paid by the plaintiff as surety on a liquor license bond given by said McGee, and by virtue of which a license to sell spirituous and intoxicating liquors in the town of Bristol was duly issued to said McGee, which bond was subsequently forfeited by reason of the conviction of said McGee of a violation of the statute laws relating to the sale of spirituous and intoxicating liquors by a licensed dealer, and another cause of action against the defendant Delaney, on an alleged promise by said Delaney that he would protect and save the plaintiff harmless from any loss, costs, or damage if the plaintiff would sign said bond as surety.

2. It does not appear in or by said complaint that the plaintiff signed said bond because of any promise good in law made to him by said defendant, Delaney.

3. It does not appear in or by said complaint that a license to sell spirituous and intoxicating liquors was ever issued to said McGee by any person, tribunal or authority legally authorized to grant or issue the same.

4. The single count in the complaint sets out a cause of action against the defendant Delaney, and a separate and distinct cause of action against the defendant McGee, which causes of action do not arise out of the same transaction, and said defendants cannot be legally joined in said action.

5. All of the facts alleged in said complaint do not constitute a legal cause of action against said defendant, Martin Delaney.

The court, *Walsh, J.*, overruled the demurrer, and the defendant Delaney, answered over denying the allegations of the complaint and alleging that the license was one personal to the licensee, " and any agreement to enable any person other than the licensee to engage in such business without

his becoming a licensee, and securing the proper conduct of the business by a bond, was illegal and void."

The finding of facts appears in the opinion, with the exception of the concluding paragraph which was as follows:

" At the request of the plaintiff and said Delaney this cause is reserved for the advice of the Supreme Court of Errors as to the proper judgment to be rendered therein as to said Delaney upon the foregoing facts, the said McGee having suffered a default."

*Noble E. Pierce*, for the plaintiff.

I. The finding clearly shows that the effort of the defendant to shield himself by the statute of frauds would, if successful, work a most outrageous fraud upon the plaintiff. " It is the accepted construction of the statute in courts of equity that, inasmuch as its design was to furnish protection against fraud, a party cannot take shelter behind its provisions, and thereby perpetrate a fraud on the other party, either actual or constructive." *Reed* v. *Copeland*, 50 Conn., 491. The fact that the action is one at law will not justify such a construction or application of the statute as to work a fraud.

II. The undertaking was an original one and not within the statute. Browne on the Statute of Frauds, §§ 161, 161*a*, *b*, *c*, and 164 ; *Reed* v. *Holcomb*, 31 Conn., 364 ; *Alger* v. *Scoville*, 1 Gray, 391; *Aldrich* v. *Ames*, 9 Gray, 76 ; *Davis* v. *Patrick*, 141 U. S. 487. The case of *Dillaby* v. *Wilcox*, 60 Conn., 71, relied on by the defendant, is not in point. The law there laid down is this : That the statute applies where a third person (in this case McGee) is *already liable*, and the undertaking is to secure that debt, while the third party (McGee) continues liable. In the present case when Delaney requested the plaintiff to execute the bond, there was no third person liable to the plaintiff.

The plaintiff can recover irrespective of any express promise on Delaney's part. He was to become a partner with McGee, and the bond was executed by the plaintiff for the benefit of that partnership. The statute has no application

to promises implied by law. *Stocking* v. *Sage*, 1 Conn., 521; *Sage* v. *Wilcox*, 6 Conn., 85.

III. But the defendant says further : This arrangement between Delaney and McGee, that the former was to share in the profits and be liable for the losses of the business carried on by McGee for their joint benefit, was illegal. This claim cannot be supported; and even if sound it is difficult to see how the plaintiff can be affected by it. It surely cannot be the law that a man engaged in a lawful business may not agree that another who furnishes the greater part of the capital shall be entitled to share in the profits.

This claim of the defendant seems to rest on the theory that as the license to sell is not property, but a mere permit to do what otherwise would be an offense against law, it is a mere personal privilege and is confined strictly to the individual to whom it is granted. *La Croix* v. *County Commissioners*, 50 Conn., 328. Granting that claim, we fail to see how it can help the defendant in this case. Possibly the license would not have protected Delaney in the sale of liquors; but there is no suggestion in this case that Delaney personally ever sold any liquor whatever, or that the bond was executed with a view to this end.

If there is a legal method in which Delaney might be interested in and connected with the business, the court will not presume (in the absence of proof of illegality), that his connection and conduct were illegal; nor will the court impose upon the plaintiff any duty of supposing that when Delaney said he was to be interested in the business, he intended anything but a legal interest in the business ; on the contrary, the legal presumption is that every man intends to act lawfully.

The arrangement was not illegal because the title to the liquors sold was partly in Delaney as well as McGee. *State* v. *Wadsworth*, 30 Conn., 58; *Lewis* v. *McCabe*, 49 Conn., 141; *Mack* v. *Story*, 57 Conn., 407. It is the power to sell that the statutes regulate, and not the title or ownership of the liquors sold, which is utterly immaterial.

IV. The liability of Delaney is not affected by the fact

that he had withdrawn from the partnership before the breach of the bond. The plaintiff was induced to sign this bond by the request and upon the promise of Delaney, and until the plaintiff was released from the obligations thus assumed, the obligation of Delaney to protect the plaintiff must continue.

V. The defendant claims that there is a misjoinder of causes of action in the complaint; that one counts on the bond as against McGee, and the other on a distinct and collateral agreement of Delaney. This is a total misconception of the complaint. It does not proceed on any such theory, nor can it fairly be so construed.

Undoubtedly the bond is evidence, so far as it goes, of the previous agreement of the parties, but it exhausts itself in that office; it cannot be invoked to prevent the parties from showing what the contract was pursuant to which it was given. *Collins* v. *Tillou,* 26 Conn., 368; *Schindler* v. *Mulheiser,* 45 Conn., 154; *McFarland* v. *Sikes,* 54 Conn., 250; *Hall* v. *Solomon,* 61 Conn., 476.

The defendant apparently seeks to have the "transaction" set forth in the complaint limited and confined to the giving of the bond. That is not the transaction alleged; and it would be taking a long step backward in pleading if such a claim as this could find support in Connecticut, in view of the spirit of our Practice Act. It is questionable, moreover, whether Delaney can urge this technical objection. It appears from the record that McGee suffered a default so that there was but one defendant before the trial court. If the complaint stated a cause of action against him, is it material that it also set forth some other and distinct cause against one who admits its correctness?

*Marcus H. Holcomb* and *John J. Jennings,* for the defendant.

I. The finding fails to support the complaint. It is not found true that in November, 1890, the defendants "had agreed to become partners," etc. It is not found true that the defendants "were about to commence to carry on said business as soon as the license required therefor was or might be duly issued." It is not found true that there was any

special promise by the defendants to save the plaintiff harmless, outside of the bond signed by McGee. There is no finding that the plaintiff relied upon Delaney's promise.

II. The contract is within the statute of frauds. *Nugent* v. *Wolfe*, 111 Pa. St., 471; *Clement's Appeal from Probate*, 52 Conn., 464; Am. and Eng. Ency. of Law, Vol. 9, p. 76; *Kirkham* v. *Martin*, 2 Barn. & Ald., 613; *Turner* v. *Hubbell*, 2 Day (Conn.), 457; affirmed in *Packer* v. *Benton*, 35 Conn., 349; Brandt on Suretyship and Guaranty, § 40.

Our court has prescribed a test by which to determine when a promise is collateral. "An undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking was made continues liable," is within the statute of frauds. *Dillaby* v. *Wilcox*, 60 Conn., 71–77; *Gridley* v. *Sumner*, 43 id., 16; *Pratt's Appeal from Probate*, 41 id., 191; *Packer et al.* v. *Benton*, 35 id., 343–349; *Clapp* v. *Lawton*, 31 id., 95; *Turner* v. *Hubbell*, 2 Day, 457.

III. The finding states that Delaney "also told the plaintiff that he, Delaney, intended to go into the liquor business with said McGee, and gave this as the reason why he did not wish to sign said bond." If from this is to be inferred that there was an understanding known to the plaintiff, that McGee and Delaney were to form a partnership and sell liquors under McGee's license, and that this intention and understanding was in any sense a consideration and inducement for Delaney's promise to the plaintiff, "I will see you all right," then said consideration was illegal; the contract between the plaintiff and Delaney was founded upon a consideration which was immoral, illegal, contrary to public policy, and the prohibition of the statute, and is void. Bishop on Contracts, Secs. 59, 74; *Treat* v. *Jones*, 28 Conn., 334; *Funk* v. *Gallivan*, 49 id., 124–128; *Myers* v. *Minnoth*, 101 Mass., 368; *Perkins* v. *Cummings*, 2 Gray, 258; General Statutes of Conn., § 3114. Sec. 3087 of the General Statutes provides severe penalties for "any person who without a license therefor" shall engage in the sale of intoxicating liquors. The license to McGee was personal to him—a "permit to do what

would otherwise be an offense against the general law." *La Croix* v. *County Commissioners*, 50 Conn., 328; *U. S.* v. *Grab*, 99 U. S., 225 (25 Co-op. Ed., p. 273); *U. S.* v. *Davis*, 37 Fed. Rep., 468. A license granted to a person who forms a partnership with an unlicensed person does not authorize the latter to make sales. Am. & Eng. Ency. of Law, Vol. 11, p. 646; *Long* v. *State*, 17 Ala., 32; *Shaw* v. *State*, 56 Ind., 188; *Wharton* v. *King*, 69 Ala., 355; *Com.* v. *Hall's Case*, 8 Gratt. (Va.), 388. McGee's license was no authority for Delaney, or for McGee and Delaney as partners, to sell spirituous liquors, and if the plaintiff was thus becoming surety, knowing these acts were contemplated, his contract with Delaney was void.

IV. The complaint is bad upon demurrer on account of improper joinder of actions. Defendant, McGee, is surely not liable upon any agreement antecedent to the bond, and there is surely no joint liability either upon the bond or upon any antecedent oral negotiations. The real cause of action is the breach of contract, and there are no sufficient allegations that Delaney was liable thereon, the whole contract having been reduced to writing, to which he was not a party. *Culver* v. *Wilkinson*, 145 U. S., 205; *Union Mutual Life Ins. Co.* v. *Mowry*, 24 U. S., 544.

The plaintiff seems to be singularly unfortunate in his complaint. He alleges that he signed the bond because of the joint promise of the defendants. That promise is surely merged in the written agreement, which speaks for itself. But upon the bond Delaney is not liable, for he did not sign it. The real facts seem to be, and the only reasonable theory of the case is, that there were preliminary oral negotiations at which Delaney was present, and then the bond was drawn up, into which all these prior negotiations were merged, and to which, as the deliberate, solemn, and certain act and agreement of the parties, they ought to be left.

FENN, J. The Court of Common Pleas for Hartford County, at the request of the plaintiff and of the defendant Delaney, reserved for our advice the question as to the prop-

er judgment to be rendered, as to said Delaney, upon the following facts found by said court; the other defendant, McGee, having suffered a default.

"On the 10th day of November, 1890, William McGee of Bristol, in said county, defendant, as principal, and the plaintiff as surety, signed a license bond for $300 to the treasurer of said county.

"The plaintiff executed said bond at the request of the defendant Delaney, who said to the plaintiff as an inducement to execute said bond, 'I will see you all right,' and also told the plaintiff that he, Delaney, intended to go into the liquor business with said McGee, and gave this as the reason why he did not wish to sign said bond.

."Upon the filing of said bond with the county commissioners, and on the 10th day of November, 1890, a license was issued by them to said McGee, to sell spirituous and intoxicating liquors in said Bristol, and McGee immediately commenced and carried on said business in said town until the 15th day of June, 1891, when said license was revoked by said commissioners, the said McGee having been legally convicted of a violation of the laws relating to intoxicating liquors, and said bond having been thereby forfeited, on the demand of the county treasurer, the plaintiff, on the 16th day of October, 1891, paid the amount of said bond, the said McGee having failed to pay the same.

"About a month or six weeks after said McGee began the business of selling spirituous and intoxicating liquors as aforesaid, Delaney became a partner in said business with said McGee, and said business was carried on for their joint benefit under the license to McGee alone; but said Delaney had withdrawn from the partnership about two months before the conviction of said McGee as aforesaid.

"Neither McGee nor Delaney has repaid to plaintiff any part of the amount of said bond so paid by the plaintiff to the county treasurer as aforesaid."

The defendant Delaney claims that the complaint was defective, and that one or more of the several demurrers filed should have been sustained. We judge by the language used

in the reservation that this claim was waived in the court below, and no such question reserved. If, however, we are mistaken in this, we think the court below committed no error in overruling such demurrers; certainly none which injuriously affected the defendant, so that they should now be considered. *Vail* v. *Hammond,* 60 Conn., 378.

The defendant also claims that the finding fails to support the complaint, to demonstrate which his counsel, in their brief, have made use of the "deadly parallel columns," without, however, satisfying us that the contention is correct. Doubtless the language of the finding was not copied from the complaint, but there are no wider differences than are justified by the rules under the Practice Act, 58 Conn., 564, Rule III., that "acts and contracts may be stated according to their legal effect," and that "immaterial variances shall be wholly disregarded."

The main inquiry, upon the facts found, is whether the contract therein stated is within the statute of frauds. The law upon this subject, namely, whether contracts of indemnity are special promises to answer for the default or miscarriage of another, or are original undertakings, has been correctly said (Am. & Eng. Ency of Law, Vol. 8, p. 673) to be "in a state of hopeless confusion, arising almost wholly from the different views taken of the scope of the statute. Where *Thomas* v. *Cook,* 8 B. & C., 728, is law, and the statute is confined to contracts of suretyship, results are reached entirely different from those obtained where *Green* v. *Cresswell,* 10 Ad. & E., 453, is followed, and contracts of indemnity are included in its scope."

In favor of the view of *Green* v. *Cresswell,* that contracts of indemnity are within the statute, the case of *Nugent* v. *Wolfe,* 111 Pa. St. 471, cited by the defendant; and in favor of the opposite view, held in *Thomas* v. *Cook,* the case of *Davis* v. *Patrick,* 141 U. S., 487, cited by the plaintiff, may be regarded as among the leading authorities. Doubtless, in England, the later case of *Green* v. *Cresswell,* has been practically overruled, and the authority of *Thomas* v. *Cook* fully restored. *Wildes* v. *Dudlaw,* L. R., 19 Eq., 198; *Yorkshire*

*Railway Wagon Co.* v. *Maclure,* L. R., 19 Ch. Div., 478. *Thomas* v. *Cook* is also followed in a majority of the American States. Browne Statute of Frauds, § 161*c.*

But it is unnecessary to examine the authorities elsewhere, more at large, because the question is not now a new one in our own jurisdiction. The cases of *Stocking* v. *Sage,* 1 Conn., 519; *Marcy* v. *Crawford,* 16 Conn., 549; *Reed* v. *Holcomb,* 31 Conn., 360, and *Clement's Appeal,* 52 Conn., 464, all bear more or less directly upon the question before us; and although *Reed* v. *Holcomb* and *Clement's Appeal* have been thought by various courts and text writers to be somewhat in conflict, we do not so think, but that from a fair examination of both, the true rule, to which both are consistent, may be discovered. In *Reed* v. *Holcomb,* where the plaintiff indorsed a note of a third party, at the request of the defendant, and upon his oral promise to see it paid, and to save him harmless if it was not paid by the makers, it was held that the statute of frauds did not apply to the case. In *Clement's Appeal,* in which no reference was made, either by counsel on either side, or by the court, to *Reed* v. *Holcomb,* Brainerd indorsed notes for Goodwin, at the request of his father, and on the father's oral promise to save him harmless. It was held that this promise was void under the statute of frauds, because not in writing. The distinction between the two cases was the principle on which *Reed* v. *Holcomb* was expressly stated to rest. In *Clement's Appeal,* although the promisor was the father of the maker of the notes, and, as such, actuated by parental affection, he had no legal or pecuniary interest whatever, so far as the record disclosed, in the transaction. In *Reed* v. *Holcomb,* the transaction was for the benefit of the defendant. Without consulting the plaintiff, he had taken the note of a firm indebted to him, payable to the order of the plaintiff, doing so for the purpose of getting the plaintiff's indorsement, that he might get the note discounted at the bank. The two cases are therefore in harmony, for the reason that *Reed* v. *Holcomb* is not, as has sometimes been supposed, an authority for the unqualified doctrine of *Thomas* v. *Cook,* that a contract of suretyship *is,* but a con-

tract of indemnity *is not*, within the statute; but only for the more limited doctrine recognized elsewhere, in most jurisdictions where *Thomas* v. *Cook* is not followed, and consistent with even *Green* v. *Cresswell*, that where the inducement is a benefit to the promisor which he did not before or would not otherwise enjoy, and the act is done upon his request and credit, such promise is an original undertaking and not within the statute.

The earlier Connecticut cases which we have cited are in accordance with this doctrine. The case of *Dillaby* v. *Wilcox*, 60 Conn., 71, and the earlier cases therein referred to, somewhat relied upon by the defendant, are not in point; but so far as they incidentally bear upon the question at all, they illustrate and affirm the distinction here made, since they establish the rule that even what is in form a new parol promise to pay the already existing debt of another, may be valid, as an original obligation on the part of the promisor, if based upon a transfer of value " the measure of which is, by the agreement of the parties, the defendant's payment of the third party's debt." *Dillaby* v. *Wilcox*, p. 80, quoting and approving Browne on the Statute of Frauds, § 214*e.*

Applying this established rule of our law to the case before us, we think the defendant is not entitled to avail himself of the statute of frauds. The bond was executed by the plaintiff at the request of the defendant, and presumably entirely upon his credit. At any rate, the only inducement given in the finding was the defendant's statement, " I will see you all right." He told the plaintiff that he, the defendant, intended to go into the liquor business with Mc-Gee, and when the finding adds that " he give this as the reason why he did not wish to sign the bond," it is of course equivalent to saying that he gave it as the reason why he did wish the plaintiff to sign it in his place, namely, as a surety upon a bond, for a license to be issued to McGee. The language used by this court in *Reed* v. *Holcomb* thus becomes as pertinent to this case as it was to that. It was there said, p. 363, referring to the plaintiff's indorsement of the third party's note : " This in substance, we think, was the same as

if the plaintiff had indorsed the defendant's own note to enable him to raise money upon it." If that be true, was not the transaction stated in the finding the same, in substance, as if the plaintiff had signed the defendant's own bond, to enable him to procure a license and become a dealer? It seems to us that there is no distinction.

But the defendant insists that if this be so, "if" (we quote from the brief) " from this is to be inferred that there was an understanding known to the plaintiff that McGee and Delaney were to form a partnership and sell liquors, under Mr. McGee's license, and that this intention and understanding was, in any sense, a consideration and inducement for Delaney's promise to the plaintiff, ' I will see you all right,' then said consideration was illegal; the contract between the plaintiff and Delaney was founded upon a consideration which was immoral, illegal, contrary to public policy and the prohibition of the statute, and is void."

It surely needs no citation of authorities to support the position that if this contract was founded upon a consideration, illegal, immoral, or contrary to public policy, it is void, and cannot support an action. So also, if the contract contemplates acts against public policy, or forbidden by statute, it is inoperative. We also concur fully with the authorities cited by the defendant, all of which are referred to in Am. & Eng. Ency. of Law, Vol. 11, p. 346, which holds that " a license granted to one person, who forms a partnership with an unlicensed person, does not authorize the latter to make sales of liquor." But, conceding all this, there is no finding that Delaney contemplated making sales himself, and certainly there can be no presumption that Delaney contemplated, or was understood by the plaintiff to contemplate, any illegal connection with the proposed business, if there was a legal way in which he might be interested in it. And we think there was, if he was only a silent partner, taking no active participation, and only concerned to the extent of capital invested. On this point, we may quote again from one of our own cases already cited, *Marcy* v. *Crawford*. When the same claim that the contract was illegal was made, this court,

by HINMAN, J., said, page 553 :—" Then as to the first error assigned, that the county court did not instruct the jury that the promise claimed to be proved by the plaintiff was an illegal promise, because, as the defendant insisted, it was a promise made in consideration of the commission of an illegal act. Now, there can be no doubt that the law will not enforce a contract to commit an illegal act. A promise to commit a battery, to pull down another's house, or to commit any such willful trespass to another, is illegal and void. But, merely because an act proves to be a trespass, which was not originally supposed to be so, will not render a promise of indemnity for the commission of it void." Again, p. 554 :—" A promise to indemnify against a trespass is valid, unless it be shown that the promisee knew the act to be a trespass." We do not think the record before us justifies us in finding that the plaintiff knew, understood or believed that the defendant contemplated the performance of any act illegal, immoral, or against public policy.

The Court of Common Pleas is advised to render judgment, upon the facts found, in favor of the plaintiff, for the amount paid by the plaintiff, with interest thereon and costs.

In this opinion the other judges concurred.