## MAY v. ROBERTS.

No. 857.  Opinion Filed May 9, 1911.

(115 Pac. 771.)

**PHYSICIANS AND SURGEONS—Frauds, Statute of—Promise to Answer for Debt of Another—Actions—Admissibility of Evidence.** R. said to M., a physician, "I want you to go to that little house (pointing same out); my tenant's wife, Mrs. B., is sick there, and I want you to look after her and take care of her." M. asked him about the pay, and he said, "I will see that it is paid." It was in answer to M.'s question about pay for such service as he might render to Mrs. B. that he said, "I will see that it is paid." Held, that it was error to exclude this evidence from the jury.

(a) Such evidence was competent and material for the consideration of the jury in connection with all the facts and circumstances proved to determine whether the liability created was primary or collateral.

(b) If the liability was primary, such verbal contract was valid, and not within the statute of frauds.

(c) If the intention was that the husband of Mrs. B. should be primarily liable, and that R.'s liability should be only collateral (that is, to answer in case of the husband's default) then the contract was void as within the statute of frauds.

(Syllabus by the Court.)

*Error from District Court, Jackson County; W. T. McConnell, Judge.*

Action by J. W. May against Eugene Roberts. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with instructions.

*O. B. Riegel,* for plaintiff in error.

WILLIAMS, J.  The plaintiff in error, as plaintiff, sued the defendant in error, as defendant, to recover upon a verified account the sum of $90 for services rendered by him as physician and surgeon at the special instance and request of the defendant during the months of August and September, 1907. The evidence on the part of the plaintiff to sustain this action was excluded from the

jury and judgment rendered in favor of the defendant, and the cause is here now by proceeding in error for review. It follows that the case will only be considered on the plaintiff's theory.

The evidence of the plaintiff was that the contract was oral; that the defendant, on August 6, 1907, said to the plaintiff, " 'I want you to go to that little house [pointing same out]; my tenant's wife, Mrs. Bonner, is sick over there, and I want you to look after her and take care of her.' I asked him about the pay, and he said he proposed to see the bill paid; he said, 'I will see that it is paid.' It was in answer to my question about my pay for such service as I might render to Mrs. Bonner as he requested me to that he said, 'I will see that it is paid.' "

In *Trulock et al. v. Blair*, 8 Okla. 345, 58 Pac. 1097, the action was for the recovery of an amount due for a quantity of ice shipped by N. B. Trulock and others to the El Reno Ice & Coal Company. In July, 1895, the defendant, Blair, requested the plaintiffs to ship their ice to McCormick, saying at the time, "I will see that the financial part is all right; I will see that the accounts are paid." On July 20, 1895, Blair wired to Trulock to "send car load of ice to McCormick at once; about out." Signed, "J. R. Blair." In that case the account was entered in the name of McCormick. The court said:

"We presume that the judgment below was rendered on the supposition that, inasmuch as the goods were charged on the books of the company to McCormick, the promises made by Blair, and his liability, if any, were collateral, and to pay the debt of another, and therefore not binding. But the fact that the goods were charged on the books of the company to McCormick was only evidence tending to show that the credit was given to Mc-Cormick, and was by no means conclusive. It was a fact open to examination, and to be considered in connection with all the other testimony offered by the plaintiffs, in order to determine to whom the credit was given. The ice was ordered by Blair upon the express promise that he would pay for it. McCormick was his employee in the business of selling beer, and the ice was ordered for the purpose of preserving the beer from spoiling, and the beer was Blair's. The credit was given upon Blair's account alone, as shown by this testimony, and was entered to the ac-

count of McCormick in order to oblige Blair, and upon his own request. The plaintiff had no knowledge of McCormick, did not know his financial condition, and gave no credit to him The evidence shows that the credit was extended exclusively to Blair. The fact that the account was entered in the name of McCormick did not necessarily imply that any credit was given to him at all. Under the evidence in this case, we think it may be properly said that the only presumption which arises from that fact was that, inasmuch as Blair requested that the account should be kept in the name of McCormick, he made the request for the purpose of keeping his own account with McCormick clear. Upon this state of facts, the judgment should have been for the plaintiffs. The conclusion upon this evidence must be that the contract was an original contract with Blair, and that the promises made were not collateral to any agreement of the plaintiff company with McCormick. * * * The object of the order for the ice made by Blair; the purpose for which it was used, and for which he wanted it and for which he ordered it, which was for his own benefit; the persistence with which he ordered it by telegram, by letter, and by visits to El Reno; and the application of the ice to the preservation of his stock of bee" —clearly manifest that the sole purpose of Blair was his own private benefit, not the benefit of McCormick; and, wherever the leading purpose of a person who agrees to pay the debt of another is to gain some advantage or promote some interest or purpose of his own, and not to become a mere guarantor or surety for another's debt, and the promise is made upon a sufficient consideration, it will be valid, although not in writing, and the contract is not within the statute of frauds."

In *Calahan v. Ward*, 45 Kan. 545, 26 Pac. 53, it is said:

"The evidence as it now stands makes a *prima facie* case against the defendant. It shows that one J. F. Mounts desired to purchase of the plaintiff, a merchant in the city of Atchison, some groceries on credit. That the plaintiff, by his chief clerk, refused to sell Mounts any more goods on credit; he already being indebted to the plaintiff for goods before purchased of him. Mounts then called the defendant, for whom he (Mounts) was at the time working, to the rear of the storeroom, and asked him if he should become responsible for some groceries for him. Defendant said he would. Mr. Toohy, plaintiff's clerk, asked Mr. Ward, the defendant, how much in groceries he should let Mounts

have, and Ward said, 'What he wants.' Toohy then asked Ward 'if he should let Mounts have $100 worth,' and Ward replied that 'he did not think Mounts would need so much.' Toohy then asked Ward 'if he should let Mounts have $50 worth,' and Ward said, 'Yes; but he wanted some time on it, until the money would be coming to Mounts from him.' Toohy asked 'how long a time he wanted'; and he said '90 days.' This evidence was corroborated and supplemented by other witnesses. The account for the goods sold pursuant to the arrangement made, as above described, was kept with Mounts—that is, the goods sold him were charged to him, instead of being charged to Ward—and the defendant claims that he is thus let out. The plaintiff offered evidence to explain why the goods were charged to Mounts, instead of to Ward. We think the whole matter should have been submitted to the jury for them to say whether the goods were sold to Mounts on his own credit, or on the credit of Ward. If the goods were sold to Mounts on the credit of Ward, then the undertaking of Ward was an original one, and he would be liable under the circumstances set forth in the evidence of plaintiff."

In *Larson v. Jensen*, 53 Mich. 427, 19 N. W. 130, the plaintiff testified as follows:

"Last August Mr. Jensen came up to me, in Manistee, and made arrangements to furnish his son-in-law goods when he called for them. The object that Mr. Jensen wanted goods for his son-in-law was because he was a roving character, and he would see them paid for. I should deliver the goods to John Labonta, and he would see them paid. He stated the object in wanting the goods. His son-in-law was a sailor by profession, and he wanted to settle him down. He wanted his daughter to run the store, and his son-in-law to work around the mills, if the store didn't require his services. And I agreed to do so."

In the opinion, which was delivered by Mr. Justice Champlin, and concurred in by Cooley, C. J., and Campbell and Sherwood, JJ., it is said:

"If this testimony by the plaintiff was found by the jury to be true, the agreement was not within the statute of frauds. The statute does not prevent a person from buying goods on his own credit, to be delivered to another, unless in writing. In such case the important question is, To whom was the credit given? And this question the court fairly submitted to the jury. And

the fact that the goods are charged on the books of the seller to the person to whom they were delivered is not conclusive that they were sold upon his credit."

In Anson on Contracts (Callahan & Co., 1887), at page 71, it is said:

"There must be a liability, actual or prospective, of a third party for whom the promisor undertakes to answer. If the promisor makes himself primarily liable, the promise is not within the statute, and need not be in writing. If two come to a shop and one buys, and the other, to gain him credit, promises the seller, 'If *he does not pay you, I will,*' this a collateral undertaking and void, without writing, by the statute of frauds. But if he said, '*Let him have the goods; I will be your paymaster,*' or '*I will see you paid,*' this is an undertaking as for himself, and he shall be intended to be the very buyer, and the other to act as but his servant."

In *Reed v. Holcomb,* 31 Conn. 360, where the plaintiff indorsed a note of the third party at the request of the defendant, and upon his honor promised to see him paid and to save him harmless, if it was not paid by the makers, it was held that the statute of frauds would not apply to the case.

In *Smith v. Delaney et al.,* 64 Conn. 264, 29 Atl. 496, 42 Am. St. Rep. 181, it was held:

"A special promise made by one person to another that he will see him 'all right,' if he will sign the bond of a third person, in order to enable the latter to obtain a license to sell intoxicating liquors, and when the promisor gives as a reason for not signing the bond himself that he intends to go into the liquor business with such third person, is not within the statute of frauds."

In *Maurin v. Fogelberg,* 37 Minn. 23, 32 N. W. 858, 5 Am. St. Rep. 814, it was held:

"Verbal directions as follows: 'You give all the goods to H. & R. that they want, and charge directly to them, and every first of the month you bring in the bill, and I will pay it,' uncontrolled and unqualified by other circumstances, imports on its face an original, and not a collateral, promise, implying that the credit was to be given exclusively to the promisor, although the goods

were to be delivered to H. & R., and is not therefore within the statute of frauds."

In *Cahill v. Bigelow*, 18 Pick. (Mass.) 369, in an opinion by Chief Justice Shaw, as to the test whether the promise is collateral when it is made before the credit is given, it is said:

"The test is this, when the promise is made before the credit is given, to decide whether one promising is an original debtor or a guarantor, namely, whether credit was given to the person receiving the goods. If it was, then such promisor is a guarantor only, undertaking to pay another's debt; if no credit was given to the person receiving the goods then the promisor is himself debtor for goods sold to him and delivered to another person, by his order; his promise is not to pay the debt of another, and, a parol promise being made upon a consideration, is a good contract at common law and binds him, and is not within the statute of frauds."

In *Boykin & McRae v. Dohlonde & Co.*, 37 Ala. 577, it is said:

"When, therefore, an action is brought against one, charging him with the value of the goods delivered to another, and on his promise to pay, and it is set up in defense, that the promise is to pay the debt of another, and was not in writing, the decisive question is, To whom was the credit given? If the credit was given solely to the defendant—that is, if the goods were really sold to him, though delivered to another—the statute is then out of the case. But, if the whole credit was not given to the defendant—that is to say, if any credit at all was given to the party receiving the goods—the promise of the defendant is collateral, and within the statute. For in that case the plaintiff would have a remedy against the party receiving the goods; and all the cases show that it does not matter upon which of the two parties the plaintiff principally depends for payment, so long as the persons for whose use the goods are furnished is at all liable to him. *  *  * "

The question in this case is whether, under all the evidence, the credit was given solely to the defendant, or to the husband of the woman who was to be treated by plaintiff, with the understanding that, if the husband did not pay the charge, then the defendant would. If the former, the defendant is liable. If the

latter, the statute of frauds intervenes and strikes down the contract so far as the defendant is concerned. However, the question might arise as to whether it was a joint liability; whether the husband of Mrs. B. and the defendant were jointly to be liable. That question is not raised, and it is not essential to pass on it, but see *Wainwright v. Straw*, 15 Vt. 215, 40 Am. Dec. 675; *Ex parte Williams*, 4 Yerg. (Tenn.) 579; 1 Smith's Lead. Cas. (5th Am. Ed.) 380, 382; Brown's Stat. of Frauds, §§ 197, 198; 2 Parsons, Contr. 301; *Norris v. Spencer*, 18 Me. 324.

This cause is reversed and remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.