## WALDOCK v. FIRST NAT. BANK OF IDABEL.

No. 3393.   Opinion Filed September 15, 1914.

(143 Pac. 53.)

1.    FRAUDS, STATUTE OF—Necessity of Writing—Original Contract—What Constitutes.   Where money is loaned to R. solely upon a verbal promise of W. and credit is extended solely to W. and no credit is extended to R., the promise of W. is original, and *does not come within the statute of frauds.*

2.    SAME—Joint Credit.   Where money is loaned or goods sold to R. and W. jointly, and credit is extended to both, and both promise to pay the same, although such money is borrowed or goods purchased for the sole benefit of R., the promise of R. and W. is original, and they are codebtors, and such promise need not be in writing, and either or both will be liable for the debt.

3.  **SAME—Collateral Promise.** Where money is loaned or goods sold to R. for his use and benefit, and credit is extended to R. and W. jointly, or if any credit is extended to R., W.'s promise to pay is collateral, and comes within the statute of frauds, unless it be in writing.

4.  **TRIAL—Instructions—Conflicting Evidence—Assumption of Fact.** Defendant requested the court to give the jury the following instruction: "The court instructs the jury that if you find and believe from the evidence in this case that Geo. F. Roberson, the original debtor, still remains liable to the bank, then in that case the plaintiff cannot recover," which instruction was refused. Held not error, for the reason said instruction assumes that Robertson was the original debtor, and deprived the jury of the right to pass upon that as an issue of fact. Held, further, that this instruction did not present the true test as to whether it was an original or collateral agreement.

5.  **FRAUDS, STATUTE OF—Question for Jury—Nature of Contract—Intent of Parties.** The question as to whether or not the verbal promise of the parties to pay the debt, created by the advancement of money, is original or collateral is generally controlled by the intent of the parties, to be gathered from their conduct and relations to each other, and all the facts and circumstances at the time bearing upon the issue, and in such case it is always a question of fact for the jury.

6.  **SAME.** The evidence on the part of plaintiff tends to show that the money in question was advanced to R. solely on the credit of W.; that R. was working for W. at the time, and a settlement was pending between them; that W. requested plaintiff over the telephone to advance the money to R. and he would sign a note for same; that plaintiff relied upon said promise and extended the credit solely to W. Held, that whether or not the promise of W. was an original or collateral promise depended largely upon the intent of the parties, and was a question of fact to be determined by the jury.

7.  **TRIAL — Instructions — Applicability to Evidence.** The court charged the jury as follows: "I charge you that if you find from the evidence that when the money was loaned it was agreed and understood that said obligation was to be a joint obligation of defendant, A. J. Waldock, and said Roberson, as a joint and several obligation, and they thereby became liable as codebtors for said loan, and that the credit was given to both jointly, then I charge you that defendant would be liable, and you should so find from the evidence." Held, that the court committed error, in that there was no issue made, either by the pleadings or by the evidence, to which this charge was applicable, and that it was otherwise misleading.

(Syllabus by the Court.)

*Error from County Court, McCurtain County;*
*T. J. Barnes, Judge.*

Action by the First National Bank of Idabel, Oklahoma, against A. J. Waldock. Judgment for plaintiff, and defendant brings error. Reversed.

*Ledbetter, Stuart & Bell,* for plaintiff in error.

*Armstrong & Etheredge,* for defendant in error.

RIDDLE, J.   This proceeding in error is prosecuted from a judgment of the county court of McCurtain county.   The parties will be referred to as they were in the trial court.   In substance, so far as is important here, the petition alleged that one Geo. F. Roberson came to plaintiff bank, desiring to secure a loan of $480.   Plaintiff, knowing that said Roberson was notoriously insolvent, refused to let him have the loan.   He then offered to make a good and sufficient note, representing that plaintiff in error, A. J. Waldock, would execute said note with him; that plaintiff called the said defendant over the telephone at Garvin, Okla.; that said defendant requested the plaintiff to let said Roberson have the said sum of money, and he would execute a note and become primarily liable for same; that defendant promised to pay said sum to plaintiff and to become primarily liable therefor; that the credit was given to defendant, and that plaintiff was looking to defendant as the party originally liable and the original obligor for said debt, which fact defendant knew and induced plaintiff to believe; that said Roberson was at the time in the employ of said defendant.   Plaintiff prayed judgment for said amount, with interest at ten per cent.   Defendant filed his answer, denying that he requested plaintiff to let said Roberson have $480, or any other sum, and denied that he agreed with plaintiff to execute a note therefor with said Roberson, and denied that he at any time promised to pay said debt.   Upon the issues thus made, the case proceeded to trial before a jury.   A verdict was returned for plaintiff, upon which judgment was entered, and the case is now before this court upon petition in error and case-made.

The evidence of plaintiff substantially sustains the allegations of the petition.   H. C. Morris, cashier. of plaintiff bank, testified as follows:

"Q. Was anything done with reference to Mr. Waldock? A. Yes, sir; I talked to him over the phone. Q. Where was he? A. At Garvin. He told me to go ahead and extend this loan to Mr. Roberson, that there was a settlement pending between him and Mr. Roberson, and that he would sign a note for 30 days in a few days when he came over to Idabel; and, acting on that theory, we advanced the money to the other party, and as evidence we took Roberson's note."

Witness Hoffman testified in behalf of plaintiff as follows:

"Q. Did you afterwards see Mr. Waldock and hear him say anything about that matter? A. Yes, sir. Q. What did he say? A. Mr. Morris got the note and asked him to sign the note, and Mr. Waldock said that he didn't want to sign the note at that time, but he was morally bound to sign it."

Defendant's testimony on this point is as follows:

"Q. You may state to the jury what conversation Mr. Morris had with you over the telephone? A. Mr. Morris called me up and stated that Mr. Roberson wanted to borrow something over $400, and wanted to know if I would stand good for it, and I told him that I hadn't had a settlement with Mr. Roberson at that time, and that if it would help Roberson out any, and if he would agree to it, and there was that much coming to him, I would sign it. Q. Did you have a conversation in the bank? A. Yes, sir. Q. On the same day this letter was written? A. The same day or the day before. Q. Tell the jury what was said in the bank? A. Mr. Morris stated that the directors were after him on account of this loan that he made to Roberson, and he brought the note out and asked me to sign it, and there was nothing coming to him in the settlement, and I told Morris if he got the title to a piece of land straightened out, and because of the conversation over the telephone, I would sign the note."

The main question raised is whether or not this transaction, as shown, comes within the statute of frauds. It is the contention of the defendant that the agreement sought to be enforced by plaintiff is collateral and not an original obligation, hence comes within the statute of frauds. On the other hand, it is the contention of plaintiff that the credit was extended to defendant before any obligation was created between the plaintiff and Roberson, and that although the promise on the part of defendant was verbal, yet the plaintiff relied upon said promise in creating said indebtedness and extended the credit to defendant,

that it is an original obligation on the part of defendant, and, if not his sole debt, that Waldock and Roberson are codebtors, and it does not come within the statute of frauds. Were the facts disclosed by the petition and evidence sufficient to warrant the court in submitting to the jury for their determination the issue as to whether or not the credit was extended solely to the defendant? If this question may be answered in the affirmative, then the question arises: Did the court properly direct the jury? If the sole credit, or any credit, was extended to Roberson at the time plaintiff parted with the money, then defendant's promise to pay is collateral, and, not being in writing, comes within the statute of frauds. To state it in another form: If, in fact, it was defendant's obligation, it could not be a collateral agreement, and hence does not come within the statute. If plaintiff looked to defendant solely in parting with its money, it is in fact defendant's obligation and not the obligation of Roberson. The proper answer to this question depends legally upon the intent of the parties at the time of entering into the transaction. The statute relied upon by defendant is section 941, Rev. Laws 1910, which reads:

"The following contracts are invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: * * * Second: A special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in the article on guaranty."

Article 8 on guaranty and the two sections applicable here are sections 1029 and 1030, Rev. Laws 1910, which read:

"Sec. 1029. Except as prescribed by the next section, a guaranty must be in writing and signed by the guarantor; but the writing need not express a consideration."

"Sec. 1030. A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: * * * Second: Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety."

The last sections quoted are simply declarations of fixed rules announced by the courts, growing out of questions arising under the statute of frauds. It will be seen that to make the intent of the parties the controlling element in determining whether or not the obligation is original or collateral is a just and sound rule. In other words, it is simply a rule to determine whether or not the debt is really the debt of defendant, or that of another party for which defendant stands surety. If plaintiff in this case would not have parted with its money upon the promise of Roberson, and intended to part with it only relying upon the promise of defendant, and in fact did extend the credit solely to defendant, and defendant at the time intended to be bound for the payment of the debt created by the loan of said money, then it logically follows that in holding defendant liable for the debt he is not being held collaterally, as a mere surety for a third party's debt, but he is held liable for his own debt. This, we think, is the true rule, borne out by the weight of authority.

It is stated by Mr. Brown, in his work on Statute of Frauds, sec. 199, as follows:

"But, after all, it is impossible to specify any one fact or set of facts on which the question to whom the plaintiff gave credit is to be determined. In the language of Buchanan, C. J., in *Elder v. Warfield*, 7 Harr. & J. (Md.) 397, 'the extent of the undertaking, the expressions used, and the situation of the parties, and all the circumstances of the case, should be taken into consideration.' "

Again, we quote from section 198, *Id.*, as follows:

"It is sometimes a matter of difficulty to determine to whom the credit has been actually given, whether to the defendant alone, in which case the debt is his own, and his promise is· good without writing, or to the third party to any extent, in which case the defendant's promise, being only collateral to or in aid of the third party's liability, requires a writing to support it."

Section 197, *Id.*:

"The question, therefore, ultimately is upon whose credit the goods were sold or the money advanced, or whatever other thing done which the defendant by his promise procured to be

done. If any credit at all be given to the third party, the defendant's promise is required to be in writing as collateral."

It was said in the case of *Reed v. Nash,* 1 Wils. 305, by the House of Lords upon an appeal from the Court of Queen's Bench, after referring to the attending circumstances:

"And these facts were held material, among others, to be put to the jury on the question whether the plaintiff did not give credit solely to the defendant, although the words used naturally imported a collateral undertaking."

In the case of *Cahill v. Bigelow,* 18 Pick. (Mass.) 370, Chief Justice Shaw laid down the rule as follows:

"The test is this, when the promise is made before the credit is given: To decide whether one promising is an original debtor or a guarantor, namely, whether credit was given to the person receiving the goods. If it was, then such promisor is a guarantor only, undertaking to pay another's debt; if no credit was given to the person receiving the goods, then the promisor is himself debtor for goods sold to him and delivered to another person, by his order, his promise is not to pay the debt of another, and a parol promise, being made upon a good consideration, is a good contract at common law and binds him, and is not within the statute of frauds. *Matson v. Wharam,* 2 T. R. 80; *Jones v. Cooper,* Cowp. 277; *Anderson v. Hayman,* 1 H. Bl. 120."

In the case of *Davis v. Patrick,* 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, in an opinion by Mr. Justice Brewer, it is said:

"The purpose of this provision was not to effectuate, but to prevent wrong. It does not apply to promises in respect to debts created at the instance and for the benefit of the promisor, but only to those by which the debt of one party is sought to be charged upon and collected from another. * * * To this may be added the observation of Browne, in his work on the Statute of Frauds, section 165: 'The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant himself.'"

In the case of *Clark v. Jones,* 87 Ala. 474, 6 South. 362, Mr. Justice Clopton, speaking for the court, said ·

"In a suit to charge defendant with goods sold to a third party, defendant is liable if they were sold at his request and on his credit; and the statute of frauds, requiring every special

promise to answer for the debt of another to be in writing, has no application."

In the case of *Lusk et al. v. Throop et al.*, 189 Ill. 127, 59 N. E. 529, the third paragraph of the syllabus states the rule as follows:

· "Where L. promised a grocer that he would pay for whatever supplies the grocer would furnish C., and the grocer extended credit to L., and looked to him for payment, such grocer could recover from L. despite the fact that he charged the supplies on his books against C. and L., since the charge on the books was not conclusive in determining to whom credit was given."

In the case of *Mackey v. Smith et al.*, 21 Ore. 598, 28 Pac. 974, in the first paragraph of the syllabus, it is said:

"Where plaintiff refuses to furnish any further supplies to a certain person, unless the defendants will become responsible, the parol promise of the defendants to pay for all supplies thereafter delivered is an original undertaking, and not, therefore, within the statute of frauds; and the fact that the supplies were charged on the books to the person to whom they were delivered is not conclusive that the sale was made upon his credit, but may be explained by showing upon whose credit the sale was in fact made."

In the case of *Gibbs et al. v. Blanchard,* ·15 Mich. 292, it is said:

"Where a party has been willing to put himself in the position of an original promisor (either jointly or severally) to a vendor for goods purchased for the benefit of, or delivered to another, the vendor has a right conclusively to presume that such relations or arrangements exist between the two as to make it the duty of the party or parties promising, as between themselves, to pay according to the promise. And to allow the contrary to be shown to defeat the promise would operate as a fraud upon the vendor."

The opinion last cited was concurred in by those two eminent judges, Cooley and Campbell.

It cannot be doubted that the rule announced by the foregoing authorities is that if W. purchases goods or borrows money for the sole benefit and use of R. and credit is extended solely to W., notwithstanding W. and R. may both be present and participate in the transaction, the promise of W. to pay for said goods

or to repay the money borrowed is an original promise and does not come within the statute of frauds. Second. If W. and R. jointly purchase goods and credit is extended to both jointly, although the goods may be purchased for the sole use and benefit of R., this would create a joint debt of both W. and R. and both would be liable thereon. Third. If goods are sold to R. for his use and benefit, but W. promises orally to pay for said goods, and the sole credit is extended to R., or if any credit is extended to R., W.'s promise to pay would be within the statute of frauds and void.

The petition was good as against a general demurrer, and the court did not err in overruling same, and in overruling the objection to the introduction of any evidence under the petition.

The next question to be considered is: Were the facts and circumstances in this case sufficient to authorize the court to submit the case to the jury? It was said in the case of *Lusk et al. c. Throop et al., supra,* in the fourth paragraph of the syllabus, as follows:

"An instruction that if T. 'intended to charge' L. with certain supplies which T. furnished to C. on L.'s promise to pay for them, T. could recover from L. therefor, was proper, since the question of intention was material in determining to whom credit was given."

The fifth paragraph of the syllabus in the case, *supra,* is as follows:

"Where L., who had promised a grocer to pay for whatever supplies he would furnish C., requested the grocer to take notes and chattel mortgages from C. as security for the debt, and released a bill of sale of the property mortgaged so that it might be so incumbered, it was proper to leave the question to the jury whether the grocer's taking of such notes and mortgages amounted to a release of L. from the obligation to pay for the supplies."

In the case of *Larson v. Jensen,* 53 Mich. 427, 19 N. W. 130, the question here under consideration was discussed. In the second paragraph of the syllabus it is said:

"The court cannot direct a verdict against a party whose evidence, though inconsistent, tends in any part to sustain his side of the issue. Goods charged upon the vendor's books to

the person to whom they are delivered may nevertheless be shown to have been sold upon the credit of another."

To the same effect, see *Temple v. Goldsmith,* 118 Mich. 172, 76 N. W. 324; *Lindsey v. Heaton,* 27 Neb. 662, 43 N. W. 420; *Morris et al. v. Osterhout et al.,* 55 Mich. 262, 21 N. W. 339.

It was said in the case of *Cowdin et al. v. Gottgetreu,* 55 N. Y. 650:

"To determine the question as to whether the transaction is a sale to the promisor or a parol guaranty upon his part of payment by another, the language of the promise is to be construed in the light of the acts of the parties and the surrounding circumstances, and the question is one of fact."

This rule is supported by 20 Cyc. 180-182. See, also, *Wainwright v. Straw,* 15 Vt. 212, 40 Am. Dec. 675.

In the case of *May v. Roberts,* 28 Okla. 619, 115 Pac. 771, the court, through Justice Williams, after quoting extensively from the cases of *Trulock et al. v. Blair,* 8 Okla. 345, 58 Pac. 1097, *Calahan v. Ward,* 45 Kan. 545, 26 Pac. 53, and cases from other states, reached a conclusion in harmony with the rule we have announced:

"The question in this case is whether, under all the evidence, the credit was given solely to the defendant, or to the husband of the woman who was to be treated by plaintiff, with the understanding that, if the husband did not pay the charge, then the defendant would. If the former, the defendant is liable. If the latter, the statute of frauds intervenes and strikes down the contract so far as the defendant is concerned."

And again, in the case of *Richardson et al. v. Parker, McConnell & Co.,* 33 Okla. 339, 125 Pac. 442, this court held, as shown by the syllabus, as follows:

"Where a party verbally promises to pay for advancements to be made to another, if the verbal contract primarily creates a liability on the part of the promisor, the same is not within the statute of frauds. (a) If the intention, however, of the promisor was that he should only be collaterally liable, and pay only in case of default on the part of the party to whom the advancement was actually made, then such verbal contract would be void as within the prohibition of the statute of frauds. (b) *Held,* under the facts in this case, that the question as to

whether the verbal undertaking was primary or collateral was a question of fact to be determined by the jury under proper instructions."

We further hold that the evidence in this case was sufficient to warrant the court in submitting the issue to the jury, under proper instructions; that it was a question for the jury to determine as to whether or not, under all the facts and circumstances, the plaintiff made the loan in question solely upon the credit of the defendant.

It is next contended that the court erred in refusing to give the following requested instruction to the jury:

"The court instructs the jury that if you find and believe from the evidence in this case that George F. Roberson, the original debtor, still remains liable to the bank, then in that case the plaintiff cannot recover."

There is no merit in this contention. The instruction is faulty, in that it assumes that Roberson was the original debtor and deprived the jury of passing upon that issue as a question of fact; and, second, it does not embody the law upon this point. We have seen from the foregoing authorities that the true test as to whether or not the promise on the part of the defendant is original or collateral is whether the credit was actually extended to him, and whether or not he intended the credit should be extended to him, and he should be liable therefor. After the original indebtedness was created and the liability fixed upon defendant, it would not be inconsistent for Roberson, for whose benefit the debt was made, to make himself liable also for the amount of the debt. If he was not secondarily liable from the beginning, by subsequent acts he might become liable, and certainly that fact would not be inconsistent with defendant's liability, if the debt was made solely upon his promise.

It is next contended that the court committed prejudicial error in charging the jury as follows:

"You are instructed that if you find from the evidence that the credit was extended to the defendant, A. J. Waldock, at his request, and that the plaintiff in making the loan of money relied solely on the promise of the said defendant to pay said debt, the defendant would be liable, and you should find a ver-

dict against the defendant for said debt. In determining to whom the credit was given, you will take into consideration the extent of the undertaking, the situation of the parties, their financial condition, and all other circumstances surrounding this transaction."

"The court instructs the jury that if you find and believe from the evidence in this case that the credit was extended to one Geo. F. Roberson, as the original debtor, and that he still remains originally liable to the bank for same; that at the time the bank made the loan and extended the credit that it did not do so solely relying upon the promise and agreement of the defendant as being directly and personally responsible to the plaintiff for the ⸺ment of the debt—then your verdict should be for the defendant."

We think these two instructions are in harmony with the rule established by the authorities from which we have quoted and cited.

The eighth assignment of error challenges the correctness of the following charge:

"I charge you that if you find from the evidence that when the money was loaned it was agreed and understood that said obligation was to be a joint obligation of defendant, A. J. Waldock, and said Roberson, as a joint and several obligation, and they thereby became liable as codebtors for said loan, and that the credit was given to both jointly, then I charge you that defendant would be liable, and you should so find from the evidence."

We are of the opinion that the exception to this instruction must be sustained. There was no issue to which this instruction was applicable, either by the pleadings or the evidence. In the petition of plaintiff it was sought to recover against defendant on the theory that he was the party to whom credit was extended. It was not charged that the loan was made to defendant and Roberson jointly, but it was charged that Roberson applied for the loan, which was refused; that thereafter, upon the express promise and agreement of defendant that he would sign a note for the loan, the money was delivered to said Roberson, relying upon the promise of defendant; that the credit was extended solely to defendant. This, in effect, is what the evidence shows. There is no evidence showing that defendant and Roberson made a

joint loan for the benefit of Roberson; but the evidence does tend to show that the bank advanced the money to Roberson upon the credit of defendant, relying solely upon the promise of defendant to repay same. In other words, that the bank loaned the money to defendant for the use and benefit of Roberson; that the money was delivered to Roberson. As we have seen, if it was the sole intention of the bank to look to defendant for repayment of this money, if the credit was extended to him solely, and he intended to make himself primarily liable for the loan, it was his debt, and an original obligation which does not come within the statute. This instruction is further defective in that it is misleading in the use of the following language: "Then I charge you defendant would be liable, and you should so find from the evidence." It is, to say the least, not clear just what the court meant by this language. It was in effect charging upon the weight of the evidence. We are not prepared to say that this charge may not have influenced the jury in rendering its verdict; it was calculated to do so. The other two charges of the court quoted herein covered the issue and are correct declarations of the law. The court, in charging the jury in the last paragraph of the charge which we are discussing, committed prejudicial error, requiring a reversal of this cause.

This cause is reversed, with direction for the trial court to grant a new trial, and to proceed not inconsistently with this opinion.

All the Justices concur.