MARTIN J. FINNUCAN, ADMINISTRATOR, *vs.* CHRISTIAN FEIGENSPAN, CORPORATION.

Third Judicial District, Bridgeport, October Term, 1908.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The terms of an oral contract of guaranty, and not the note and mortgage given as collateral security for its performance, measure the extent of the obligation assumed by the guarantor.

A contract of guaranty, like any other, is to be construed according to what is fairly presumed to have been the understanding and intent

of the parties; and the language used will not be extended by any strained construction for the purpose of enlarging the guarantor's liability.

For the purpose of discovering the intent of the parties, their situation and the circumstances connected with the transaction may be considered, and their language interpreted in the light of such evidence.

In the present case A agreed to loan B $450 and also to furnish him with certain merchandise to start in business, provided he should be indemnified against loss; whereupon C agreed to guarantee payment of the merchandise to be furnished to B and the repayment of the $450 loan, "not exceeding the sum of $750." Held that the obligation thereby incurred was not one of a continuing character, but one which was limited to the specific loan and to merchandise furnished, the total amount of both of which should not exceed $750; and therefore the guarantor was entitled to be credited with any payments specifically made by the debtor to be applied on the loan, notwithstanding that at the time such payments were made the total indebtedness on both items exceeded the amount of $750.

Argued October 29th—decided December 18th, 1908.

ACTION to recover money overpaid through a mistake of fact, brought to and tried by the Court of Common Pleas in New Haven County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff for $311, and appeal by the defendant. *No error.*

On or about December 5th, 1896, one Martin J. Finnucan was desirous of engaging in the business of selling spirituous and intoxicating liquors in Ansonia. He did not have the necessary means and applied to the defendant, a Newark, New Jersey, corporation, having an agency in Ansonia, to furnish them to him. In response to this application the defendant agreed to loan Finnucan $450 in cash and to furnish him certain merchandise of its manufacture necessary for the conduct of the business, upon condition that security to indemnify it against loss for such loan and furnishing of merchandise was given. Finnucan thereupon appealed to Ellen Corr and Mamie Finnucan to provide the demanded security, and thereupon they agreed with the defendant "to guarantee to the defendant payment for

merchandise to be thus furnished by the defendant to the said Martin J. Finnucan and for the repayment of said sum of $450 to be thus loaned to him by the defendant, not exceeding the sum of $750."

On the same day, in pursuance of this agreement, Ellen Corr and Mamie Finnucan executed, in favor of the defendant, their note for the sum of $750, payable on demand, with interest, and, to secure the note, a mortgage on a piece of land belonging to them.

The defendant thereupon loaned Finnucan the $450 as agreed, and supplied merchandise for the conduct of the business, which was begun December 12th, 1896. Finnucan carried on the business for about three months. During this time the defendant continued to furnish merchandise. At the end of that time, the business having proved unprofitable and the defendant having refused to continue selling to Finnucan, he turned over the business, including the license, to the defendant and another person secured by the defendant to continue the business. The goods furnished Finnucan by the defendant amounted to $464.50, and when he ceased business he was indebted to the defendant in that sum therefor, and also for the cash loan of $450. Later in 1897 he made to the defendant seven payments of $37.50 each, making in all $262.50, which were specifically made on account of the $450 loan. What became of the apparent credit for the transfer of the business and license is not stated.

Ellen Corr died in January, 1898, and Daniel E. McMahon was appointed by the Court of Probate to sell her real estate, including the mortgaged premises, to discharge the liens of record out of the proceeds, and to pay over the balance to the administrator of her estate, who was the defendant's local agent. McMahon sold the property as directed, and out of the proceeds paid to the defendant, in discharge of said mortgage, $972, being the principal of said mortgage note with interest thereon from its date to

the date of the payment, December 12th, 1901. At the time.McMahon made this payment he was not informed that any payments had been made by Finnucan on account of his indebtedness for which said security had been given, and believed that none had been made. Said several payments, with the interest thereon to December 12th, 1901, amounted to $311.55, for which amount judgment was rendered.

*Charles C. Ford,* for the appellant (defendant).

*Bernard E. Lynch,* with whom was *Frederick M. McCarthy,* for the appellee (plaintiff).

PRENTICE, J. The plaintiff confessedly is entitled to recover back from the defendant any excess of the payment made to it by McMahon over and above the sum which it was then entitled to receive by virtue of the guaranty obligation entered into by Ellen Corr and Mamie Finnucan, together with the interest on such overpayment. This obligation was created by a parol agreement, in pursuance of which the note and mortgage given by the guarantors were made and delivered to the defendant as collateral security for the performance of the obligation assumed. These instruments do not express the principal contract entered into. They embody an incidental contract only. The court has found the terms of the parol guaranty contract, the circumstances which led up to its creation, and the situation surrounding the parties at the time of its creation. This contract, which measures the extent of the obligation of Ellen Corr and her coguarantor, is to be construed, like other contracts, according to what is fairly to be presumed to have been the understanding and intent of the parties, and the language used will not be extended by any strained construction for the purpose of enlarging the guarantors' liability. *Gay* v. *Ward,* 67 Conn. 147, 161, 34

Atl. 1025; *Lewis* v. *Dwight,* 10 Conn. 95, 100; *White* v. *Reed,* 15 id. 457, 467. For the purpose of discovering the intent of the parties, their situation and the circumstances connected with the transaction may be considered, and their language interpreted with the help of that evidence. *Bartholomew* v. *Muzzy,* 61 Conn. 387, 393, 23 Atl. 604. Reading the language used by these parties in this way, it cannot be fairly said that it embodies a continuing guaranty. Its fair import is that the obligors agreed to guarantee the repayment by Finnucan of the $450 cash advanced, and the payment by him of the purchase price of merchandise to be furnished for the business, in a further amount which would bring the total of cash and goods up to $750. Upon two occasions strikingly similar guaranty contracts have had a similar construction. *Hall* v. *Rand,* 8 Conn. 560; *White* v. *Reed,* 15 id. 457.

The court was therefore not in error in holding that the payments made by Finnucan to the defendant, all of which were made on account of the $450 loan, were in reduction of the indebtedness which was the subject of the guaranty, and that the payment by McMahon, being for the whole amount of $750 and the interest thereon, was an overpayment of the amount actually due from the guarantors, by the amount of the several Finnucan payments and the interest thereon since they were made.

There is no error.

In this opinion the other judges concurred.