CORNELIA COLE MCLOUGHLIN ET AL., ADMINISTRATORS,
*vs*. WILLIAM G. SHAW, TRUSTEE, ET AL.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A duly-executed note and mortgage upon which suit is brought are
   presumably valid instruments until their invalidity is established
   through evidence offered by the defendant.
The law of another State or country will be presumed to be like our
   own, in the absence of any evidence to the contrary.
A contract which is to be performed in another State or country, or
   which is to have its entire beneficial operation and effect elsewhere
   than in the place of its execution, is to be construed according to
   the law of the latter place,—since that is the presumed intent of
   the parties.
A power "to charge" real estate, conferred upon trustees by the deed
   of trust, may or may not authorize the trustees to mortgage the
   property; and whether it does so or not in a given case must depend
   upon the construction placed upon the deed as a whole.
In the present case the underlying and clearly expressed purpose of the
   trust was to provide a home for certain children and grandchildren,
   which would or might be imperiled by giving the trustees a power
   to mortgage the property; and therefore the court, reading the
   trust deed in its entirety, reached the conclusion that the trustees
   had no power to mortgage the premises.
Whether the plaintiff might not have secured an order for the restitution

of the money loaned to the trustee and used for the benefit of the beneficiaries' property, had he seen fit to ask for such relief, *quære*

Submitted on briefs April 16th—decided July 20th, 1920.

SUIT to foreclose a mortgage of real estate, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs. *No error.*

On February 12th, 1904, Cossitt and Comstock, both residing in Canada, owned jointly Roton Hill Farm in Norwalk, Connecticut, and at their request the defendant Shaw, a lawyer in Canada, drew a trust agreement which they executed. It provided that Cossitt was to deed his interest in this farm to Comstock, and that Comstock was to hold the farm as security for payments made by him on account of the farm, and, after repayment, was to hold the farm in trust for the children of Shaw.

The trust deed further provides that Comstock may transfer and deliver over to Shaw and his wife or the survivor of them, or to such others as they may designate, any residue of these premises and of the proceeds derived therefrom, to hold the same upon trust for said children upon the following terms: Such trustee may "sell, convey, charge and dispose" of all such residue and increase and hold the proceeds thereof as trustees of said children. Mr. and Mrs. Shaw shall, during their joint lives and the life of the survivor, maintain a home for the children, and for the maintenance of the home may devote such part of the residue and increase from time to time at their discretion; "provided that the said William George Shaw and Estelle Cossitt Shaw and the survivor of them, and each of said children as he or she may attain an age enabling them or him or her so to do, shall contribute in due proportion to the maintenance and support of such home to the best

of their, his or her ability, to the end that said rest, residue and remainder, surplus and balance, increase and accumulations, may be preserved so far as possible." Mr. and Mrs. Shaw are to devote so much of their time and knowledge, skill and energy as may be necessary for improving and developing and managing said premises, and all such service shall be deemed to be paid by their occupancy or enjoyment of said home. All the residue not needed for the maintenance of the home may, at the discretion of Mr. and Mrs. Shaw, be used for the support, education or advancement of the children. All such residue may be reinvested at the discretion of the then trustee, with the concurrence of Mr. and Mrs. Shaw, with the intention of benefiting the trust fund. All the residue shall be distributed among the children at the discretion of Mr. and Mrs. Shaw.

The beneficiary defendants are the children of Mr. and Mrs. Shaw and the grandchildren of Mr. Cossitt, and at the time of execution of the trust deed resided with their parents in Connecticut where the premises conveyed were located.

Shaw, in using the word "charge" in the trust deed, used it in the belief that it was the equivalent of "mortgage."

In order to procure a mortgage on said property Shaw, as trustee, on April 7th, 1913, conveyed these premises to one Hamilton, and he executed a mortgage for $35,000 to Shaw, who assigned this to one McLoughlin, and thereupon Hamilton reconveyed to Shaw, trustee, subject to the mortgage. In fact, the trustee got value from this mortgage transaction of about $16,000.

Shaw did not give these premises or the matters of the trust proper attention, and did not pay the tax and interest.

The plaintiff acquired the mortgage subject to the equities between McLoughlin and defendants.

No evidence was offered of the law of Canada governing the matters in issue.

None of the beneficiaries under the trust deed were consulted by the trustee in said loan, and it did not appear that they had knowledge concerning the same or the purpose of the loan.

The transaction was attacked for fraud; in view of the conclusions reached in the opinion the facts concerning this issue are not set out in detail.

McLoughlin, the owner and holder of the mortgage, deceased, and the executors of his estate assigned said note and mortgage to the plaintiff.

*Edward M. Lockwood,* and *Herbert C. Brinckerhoff* of New York City, for the appellants (plaintiffs).

*Henry E. Shannon* and *Frank L. Wilder,* for the appellee (defendant Shaw, Trustee).

*John H. Light* and *Truman Light,* for the appellees (defendants Mary E. Shaw *et al.*).

WHEELER, J. The note and mortgage in reliance upon which the plaintiffs bring their foreclosure, were duly executed, and will be presumed valid until the contrary be proven; and the burden of proving this is upon the defendants.

The mortgage and note were executed under the authority of the trust agreement, and the defendants claim in their defenses, first, that the trust agreement gave no power to execute the note and mortgage, and second, that they were procured by fraud and hence are invalid.

The trial court held these instruments invalid be-

cause "the terms of that agreement do not permit the trustee to mortgage the property," and it refused to find that the agreement was procured by fraud.

The plaintiffs' appeal tests the correctness of this decision, while the defendants' appeal seeks to correct the finding and thus to substantiate the second defense.

The defendants do not press their appeal in case this court sustains the trial court in its holding that there was no power in the trustee to execute the mortgage. Since this is the conclusion we have reached, we do not consider the defendants' appeal.

There are two grounds upon which the lack of power to execute this mortgage is placed by the defendants. First, it is claimed there is no power to mortgage given by any of the terms used in the trust agreement; and second, even though one or more of the terms used might be interpreted as giving this power, the agreement as a whole clearly denies such power.

The plaintiffs insist that the agreement is governed by the law of Canada. If this were true, we must still interpret and construe it by the law of Connecticut, for the finding is that no evidence was offered of what the law of Canada was, hence it is presumed to be like our own law. *American Woolen Co.* v. *Maaget*, 86 Conn. 234, 85 Atl. 583. But we need not rest upon presumption. This agreement is to be operative in Connecticut, it concerns premises here, and the beneficiaries of its bounty are minors resident in Connecticut. Where the contract is to be performed elsewhere, or is to have its entire beneficial operation and effect elsewhere, then the law of the latter place rather than the *lex loci contractus* governs, for it is presumed to have been made with reference to the law of the place of its beneficial operation. *Chillingworth* v. *Eastern Tinware Co.*, 66 Conn. 306, 317, 33 Atl. 1009; *Beggs & Co.* v. *Bartels*, 73 Conn. 132, 46 Atl. 874; *White* v. *Holly*, 80 Conn.

438, 445, 68 Atl. 997; *Illustrated Postal Card & Novelty Co.* v. *Holt*, 85 Conn. 140, 81 Atl. 1061.

The only language in the agreement in which the defendants find the power to mortgage, is in the clause which provides that the trustees "may at any time sell, convey, charge and dispose of all such residue," etc. Narrowing the claim, it is that the power to "charge" is equivalent to the power to mortgage.

"Charge" is defined as the burden or duty laid or imposed upon a person or thing. *Merchants Exchange National Bank* v. *Commercial Warehouse Co.*, 49 N. Y. 635. In its legal meaning it is of broad and large signification; and it includes, as applied to property, a security for the payment of a debt or performance of an obligation by way of a lien or mortgage, or a claim which is to be satisfied out of the specific thing or proceeds thereof to which it applies. "The word *charge*, in its legal acceptation, has a very broad meaning. It includes payments charged upon land by *devise*, as legacies; those by *deed*, as rents, annuities and mortgages; those by *operation of law* for public purposes, as taxes and assessments; those by *effect of law*, in private suit, as judgments." *Darling* v. *Rogers*, 22 Wend. (N. Y.) 483, 491; *Abramson* v. *Horner*, 115 Md. 232, 246, 247, 80 Atl. 907; *Cain* v. *Miller*, 117 Md. 45, 50, 82 Atl. 1055; *Griggs* v. *Banks*, 59 Ala. 311, 316; *Holden* v. *Rison & Co.*, 77 Ala. 515, 518; *Nuzun* v. *Herron*, 52 W. Va. 499, 44 S. E. 257; 11 Corpus Juris, p. 291. So that the word "charge" may include the power to mortgage, and unless there be something in the agreement which indicates that it was not used in this sense, we think its use in connection with land must be held to include the power to mortgage.

But the power to mortgage is not its only meaning. "Charge" may include any claim upon premises to the satisfaction of which a court of equity would condemn

them. *First National Bank* v. *Elliott*, 125 Ala. 646, 651, 27 So. 7. And the terms of this agreement do, as the trial court was inclined to hold, limit the meaning of the word "charge" to such expenditures respecting the property as a court of equity would approve and enforce, and do not permit the trustee to mortgage the property. It is found that the scrivener, Shaw, drew the agreement intending to use the word "charge" as the equivalent of "mortgage"; but it is not found that Cossitt and Comstock knew of this use or had a similar intention, and it is found that none of the beneficiaries under the agreement were consulted regarding this mortgage, and had no knowledge concerning it or the purpose for which its proceeds were to be used.

The agreement provides that Comstock may repay himself for all expenditures in connection with the purchase, maintenance, improvement and development of the premises, by sales of, or loans made upon, the premises. It is noticeable that the scrivener uses the word "loan" as applied to the power of Comstock, but nowhere else does this use appear in the agreement. It is also noticeable that power is conferred upon Comstock to expend funds of the estate or of his own for the development of the premises, but in no part of the agreement is a like power conferred upon the Shaws. Comstock may, after repayment of his own debt, hold the residue or the proceeds in trust for the children of Mr. and Mrs. Shaw; or he may convey the residue and proceeds to Mr. and Mrs. Shaw, to hold the same in trust for the children in accordance with these terms. He chose the latter course and transferred these premises to Mr. Shaw in trust, upon the terms specified in the trust agreement.

The underlying purpose of the trust was to provide a home for the children. The agreement specifically provides that so far as the residue and increase may

enable them so to do, Mr. and Mrs. Shaw, or the survivor of them, shall maintain a home for said children. So solicitous upon this point is the agreement, that it provides that Mr. and Mrs. Shaw and the children upon attaining an age enabling them so to do, shall contribute to the maintenance of the home to the best of their ability, to the end that the residue and increase may be preserved so far as possible. The agreement specifies that Mr. and Mrs. Shaw and the survivor of them are and is to devote so much of their time, knowledge and energy, as may be necessary, for the purpose of improving and developing the premises and of managing the same and the residue and increase, and of maintaining the home, and that the services so rendered shall be deemed remunerated by their occupancy and enjoyment of the home. Here is definite provision for the care and development of the subject of the trust through personal service, but no suggestion of the development of the premises through the expenditure of moneys raised by mortgage of the premises. The central idea of the trust is the maintenance and continuance of this home during the lives of Mr. and Mrs. Shaw and so far and so long as the premises or their proceeds will admit of it; and such part of the residue and increase other than may be required to maintain the home, may be devoted to the support and education of the children. We pointed out in *O'Brien* v. *Flint,* 74 Conn. 502, 505, 51 Atl. 547, the difference between a sale of property and a mortgage of property: "A sale of property presumably brings its full value. A mortgage presumably brings but a part of its value, and yet may result, by foreclosure, in the loss of the rest." That is this case, if the power to mortgage is given by this trust deed. It does not seem a reasonable view that the settlors of this trust should in explicit fashion have so safeguarded this home for the

children during the lives of Mr. and Mrs. Shaw, and at the same time have given the trustees the power to mortgage and thus to destroy the home. Moreover, the agreement directs the investment of the proceeds of sale for the purpose of the trust.

In *Cumming and Pollock* v. *Williamson*, 1 Sandf. Ch. (N. Y.) 17, 25, where the power directed the investment of the proceeds of sale, the court said: "Here the disposition of the proceeds to arise from the alienation, precludes the supposition that a mortgage was ever within the intention of the parties delegating the power." *Bloomer* v. *Waldron*, 3 Hill (N. Y.) 361. This applies to the trust committed to Mr. and Mrs. Shaw. According these trustees the power to mortgage imperils the purpose of the trust, and that purpose can be carried out without implying the power to mortgage in the power to charge; for the property is susceptible of division and sale by parcels. Reading this trust deed as an entirety, we think it does not give these trustees the power to mortgage.

The plaintiff claims relief by way of foreclosure. He does not seek reimbursement by way of equitable lien for funds advanced to these trustees for the benefit of the premises or the beneficiaries. No claim for restitution of the $15,400 paid the trustee in cash, and used for the benefit of the beneficiaries' property, was made upon the trial. The judgment that the trustee had no power to mortgage the trust property is equivalent to finding that the mortgage was void and setting it aside. We think the Superior Court had the power in this action to order restitution of the sums paid the trustee and used for the benefit of the beneficiaries, but no such claim was made to the court or considered by it, and hence we do not regard this question as properly before us.

Counsel for the plaintiff urge us, by our order, to

avoid further ligitation of this matter. In view of what we have said upon the plaintiffs' right to restitution, we do not anticipate a continuance of this litigation.

There is no error.

In this opinion the other judges concurred.