ABRAM SPELKE ET AL. *vs.* WILLIAM G. SHAW ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued November 4th, 1931—decided February 9th, 1932.

*William H. Comley,* for the appellants (plaintiffs).

*Charles S. Hamilton,* for the appellees (defendants).

HAINES, J. The subject-matter of this litigation first came before this court in July, 1920, in an action to foreclose a mortgage upon the real estate in question. *McLoughlin* v. *Shaw*, 95 Conn. 102, 111 Atl. 62.

It then appeared that in 1904 the land, known as the Roton Hill Farm, was formerly owned jointly by Cossit and Comstock, who executed a trust agreement providing that Cossit should deed his interest to Comstock, who was to hold the farm as security for payments made by the latter on account of the farm and after repayment, was to hold the farm in trust for the children of Shaw, who were the grandchildren of Cossit; or he could transfer it to Shaw and his wife or the survivor of them to hold for their children upon the same trust. Comstock chose the latter course and transferred the premises and at the time of the action Shaw was the trustee thereof. In order to procure a mortgage upon the property Shaw, as trustee, in 1913 conveyed the premises to a man named Hamilton who then executed a mortgage to Shaw, who as-

signed the mortgage to a man named McLoughlin; Hamilton then conveyed the premises to Shaw trustee, subject to the mortgage. Executors of the estate of the mortgage holder, McLoughlin, assigned the mortgage to the plaintiff Cornelia McLoughlin, who brought the action for foreclosure of the mortgage. Shaw, trustee, set up two defenses to the action: (1) that the trust agreement conferred no power to make the mortgage and (2) that the mortgage was procured by fraud and was invalid. We held the mortgage invalid for the reason that the trust agreement did not authorize the encumbering of the lands by a mortgage; "reading this trust deed as an entirety, we think it does not give these trustees the power to mortgage." P. 110.

In a writ of error which came before us in 1929, *Shaw* v. *Spelke,* 110 Conn. 208, 147 Atl. 675, it appeared that Spelke furnished $20,219 to Shaw trustee and had received an absolute deed of certain of the property and had brought an action against Shaw individually and as trustee, to quiet and settle the title. This is the action we are now considering. The plaintiffs alleged that the defendant as an individual and as trustee was claiming an interest in the property adverse to the plaintiffs and Shaw again set up two separate defenses: (1) that the money in question had been advanced by Spelke to him as trustee to enable the trustee to redeem the premises from an impending foreclosure and that Shaw individually and as trustee had given a warranty deed, and his wife and all the children as beneficiaries under the trust had given deeds of their interests to Spelke in consideration for that advancement, and that Spelke had at the same time executed and delivered to Shaw individually a unilateral agreement granting Shaw, in consideration of the prompt payment by the latter of interest

on the money in question, together with taxes upon the property, an option to purchase the property for $30,219, all to be exercised by Shaw before July 15th, 1927, a period of two years. To these papers was attached an affidavit by Shaw that the facts recited in the option were true and that the conveyances to Spelke were absolute conveyances in fact as well as in form; (2) that Shaw trustee did not intend to make an absolute conveyance to Spelke and that he executed this affidavit under undue influence and economic pressure, and that the conveyances were in fact only for security for the $20,219 which had been furnished by Spelke, and that he, Shaw trustee, was still the rightful owner of the property. Spelke by his pleading then denied that the conveyances were for the purpose of security and denied that the affidavit was procured by duress. He further pleaded that Shaw had been in default in payments required under the option and had filed a caveat against the property setting forth his claim of title as trustee. In this situation the parties entered into a stipulation that the court might find the issues in favor of the plaintiff and enter a judgment in accordance with a judgment-file attached to the stipulation, and judgment was so entered, holding that the plaintiff had absolute title in fee and that Shaw trustee had no interest and that the interest of Shaw individually was only such as he acquired under the option referred to; and further that Shaw was in default but that upon payment by him individually of the sum of $30,-771.46 on or before June 1st, 1928, he should receive a deed of the premises, otherwise all his rights to terminate. The writ of error referred to brought this judgment in question, and we held that the judgment having been by consent, the parties would ordinarily be estopped from claiming that the court erred, and

the judgment would be held absolutely conclusive, but that under the circumstances disclosed by the record, Shaw had obtained the right to purchase the property in his individual capacity and the judgment had by its terms confirmed that right to him with the result that he could thus acquire as his own the very property which he had formerly held as trustee, free from all claims of the beneficiaries. We could not put our stamp of approval upon such a result and as the beneficiaries had not been parties to the action, we held their rights could not be concluded in that proceeding and it was necessary to set the judgment aside.

Thereupon the plaintiff by permission of the Superior Court amended the complaint and cited in the wife and children of Shaw as parties in interest. Shaw in his capacity as trustee then made answer admitting that he had no claim upon the property individually but asserting his ownership as trustee, and answers were filed in behalf of the children as beneficiaries setting up their claims to the property as such. It having thus been conclusively decided that Shaw in his individual capacity had no interest in the property, the controlling question before the trial court was whether the conveyances between the parties were intended as absolute conveyances or for security only and in effect an intended mortgage. The trial court upon full hearing took the latter view and held that as the decision in *McLoughlin* v. *Shaw* showed that a mortgage was unauthorized by the terms of the trust, the conveyances were therefore illegal and the plaintiffs were not entitled to the relief sought. The plaintiffs' appeal from this judgment is now before us.

In addition to the facts already referred to, the court found that some time before November, 1924, the Bridgeport Land & Title Company had brought

an action to foreclose an equitable lien upon a portion of the property and Shaw as trustee in order to obtain funds to pay the lien, had made fruitless efforts to find a purchaser for some of the property and then approached Spelke, a real-estate operator, upon the subject. Later, on November 29th, 1924, Spelke offered to purchase about fifty acres of the land on certain terms by which lots were to be sold at the expense of Spelke until Shaw trustee had received $50,000 and the balance of the land unsold to be then transferred to Spelke for his outlay and services; that this offer was refused and that Spelke then offered to buy certain of the lands for $50,000, paying $20,000 in cash and giving a mortgage back for $30,000; this not being accepted for some time, Spelke withdrew the offer; that a judgment of foreclosure in favor of the Bridgeport Land & Title Company was entered and the day of redemption fixed for July 1st, 1925, and Shaw trustee renewed his efforts to find a purchaser but without success; that in June, 1925, Spelke offered Shaw trustee a two-year loan of the required funds provided Shaw trustee would pay a bonus of $10,000, Spelke to be secured by the land described in the complaint; Shaw trustee was not satisfied with this offer and wrote Spelke again, offering to sell him sufficient land for the purpose of raising the necessary funds and at a meeting between the parties the following day Spelke refused that offer but reaffirmed his willingness to furnish him the money with the land as security and suggested that Shaw trustee get legal advice as to how this could be done; that the attorney consulted knew of our decision in *McLoughlin* v. *Shaw* that the trustee did not have authority under the trust deed, to mortgage the property, and told Shaw that Spelke would require a deed from him as trustee and separate deeds from the beneficiaries; the attorney

had obtained from the court an extension of the law day from July 1st to July 15th, 1925; that on July 13th the deeds and the unilateral agreement or option were shown to Shaw and on the 15th, the day set for the redemption of the premises, Spelke, Shaw and the attorney met by appointment at the office of the Bridgeport Land & Title Company, when the affidavit was produced by the attorney for the first time, for Shaw's signature; that Shaw demurred to signing it and was told that if he did not the whole matter would be dropped; that this was about two hours before the period for redemption was to expire and so Shaw signed the affidavit, and the deeds, option and affidavit were then delivered and the plaintiffs furnished the money to settle the claim of the Bridgeport Land & Title Company which was discharged, as well as certain other claims upon the property; that the total amount to be furnished by Spelke to Shaw under this arrangement was $20,219, though it later appeared that one obligation thought to have been $5219 was in fact but $4250 and the difference of $969 was not credited to Shaw by the plaintiffs or his obligation reduced; that the defendants collected interest from Shaw upon the entire amount first stipulated for, viz: $20,219, up to January 15th, 1926, when Shaw sold a lot from the property and $1500 of the proceeds was paid to the plaintiffs by him and thereafter Shaw continued to pay interest to the plaintiffs, the last payment being January 1st, 1926, for three months; that the property was listed by Spelke in his own name from the time he received the deeds. The court also found that the beneficiaries knew nothing of the merits of these transactions but signed their deeds relying entirely upon Shaw as trustee and believing that they were thus protecting the property.

There are numerous requests for changes in the

finding but we discover none which can be granted that have any important bearing upon the general question raised by the facts which we have detailed. Most of the findings objected to are supported by the evidence and only in some unimportant details, not necessary to refer to, do we find lack of such support.

There are also numerous requested additions to the finding, many of them being sufficiently covered, however, by the finding as it stands and others unnecessary and of no importance in view of the main question involved. We are asked to find, however, that the $20,219 which Spelke in fact furnished was under an agreement to purchase, while the trial court in accordance with Shaw's testimony found that it was an offer of a two-year loan. Shaw testified to the latter as the understanding, and Spelke to the former, and with such a conflict of testimony the question of credibility was sharply raised for decision by the trial court. Under all the circumstances detailed the court decided in favor of Shaw, and in paragraph twenty-five of the finding, which is not attacked, the court says that on June 14th Spelke told Shaw he would not purchase the land but would only make a loan in accordance with the proposition he had previously made, and that he would want the security put into such shape as the attorney would advise. It was apparently under these circumstances that the attorney prepared the papers in question. Additional weight is given this conclusion of the trial court by the facts that afterward Shaw sold some of the lots and paid Spelke on account, $1500; that Shaw paid interest for all or part of the two-year period for which he testified the loan was to run. These are the indicia of a mortgage loan rather than of an outright sale, and although they might be otherwise explained they tend strongly to support the conclusion of the trial court

that it in fact was a loan of money upon land as security which Shaw was expected to repay eventually. The true character of the transaction was thus determined by the trial court upon conflicting evidence which it was the province of that court to decide and with the support given to the conclusion by the surrounding circumstances, we are now unable to say that the conclusion was not a reasonable one with which we cannot interfere. The finding shows, moreover, that so far as the beneficiaries are concerned, they had no intent to absolutely dispose of their interests when they delivered their deeds, but supposed they were simply protecting their interests and property by so doing. One assignment of error relates to a ruling on evidence. The plaintiff Spelke was asked whether he ever understood or intended that the transaction with Shaw was to be a loan. Upon objection the evidence was excluded on the ground of incompetence and immateriality. The evidence was admissible and the ruling erroneous. It was, however, harmless for it would only have served, if answered in the negative, as it obviously would have been, as a reaffirmance and reiteration of the claim of the witness made over and over on the stand that he intended and understood that it was to be a purchase and sale transaction.

The result of the conclusion as to the facts, must be that pointed out by the trial court, that the transfers having been made under an agreement to loan upon these lands as mortgage security they were illegal and invalid, being ultra vires of the trust deed under which the lands were held. *McLoughlin* v. *Shaw,* 95 Conn. 102, 111 Atl. 62. It results that the plaintiffs do not have the fee to these lands as claimed in the complaint. The facts upon which the invalidity of this claim rests, having been set out as defenses, the decision for the

defendants necessarily deprives the plaintiffs of relief in that form. *Wiggin* v. *Federal Stock & Grain Co.*, 77 Conn. 507, 59 Atl. 607.

It does not follow from this conclusion that the plaintiffs have no possible interest in these lands by equitable lien or otherwise. The issues joined and the prayers for relief are far broader than the single question of the fee. The court was asked to "hear the several claims and determine the rights of the parties . . . the questions and disputes . . . quieting and settling the title to said premises." This is sufficiently comprehensive to call for a full hearing of all the facts and the determination in the trial court of the exact status of these lands and any rights of the parties therein to which they may be entitled in law or equity. The appellants' assignment of error in this regard is sustained.

There is error; the cause is remanded to the Superior Court for further action and decree in accord with this opinion.

In this opinion the other judges concurred.