BRONX DERRICK AND TOOL COMPANY *vs.* THE PORCUPINE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 8th—decided August 1st, 1933.

*Sanford Stoddard* and *Johnson Stoddard,* for the appellant (defendant).

*Harry B. Dinerstein,* with whom, on the brief, were *Joseph G. Shapiro, Harry Allison Goldstein* and *Charles S. Brody,* for the appellee (plaintiff).

AVERY, J. The plaintiff corporation is engaged in the business of selling and renting derricks and other apparatus used in the erection of steel structures. The defendant furnishes steel for building construction. Patrick F. Doody, in 1926, under the name of Doody Steel Erecting Company, was engaged in the business of erecting steel buildings. In the spring of 1926, these parties were engaged in furnishing and erecting steel in a building in New Britain.

The plaintiff brought this action in two counts; the first sought to recover on an order given by Doody on the defendant and in favor of the plaintiff from which Doody was renting certain equipment. The plaintiff was about to remove this equipment from the job because of Doody's failure to pay the rent due, and, thereupon, accepted an order from Doody for the payment to it of $1535.84, due or to become due him from the defendant, the amount to be charged to Doody's account. The sum of $250 was paid on account of this order and the court found it to be all that was due Doody, and rendered judgment for the defendant on the first count.

The second count sets forth that prior to July 22d,

1926, the plaintiff rented to Doody certain equipment and agreed to sell it to him under a conditional sales contract, and apply the rental accrued and paid in part payment on the contract; that the equipment was used by Doody on behalf of the defendant and was necessary to the proper completion of a piece of work for it; that Doody failed to pay the rental as required or to make the necessary payment on account of the conditional sales contract, whereupon, the plaintiff threatened to remove the equipment from the job, and the defendant, in order to secure the further use of the equipment and to induce the plaintiff not to remove it, agreed to secure the latter for rental of the apparatus in the amount of $685.84, due June 1st on the New Britain job, and from that date forward at the rate of $65 a week; and that the plaintiff, in reliance upon this agreement, did not remove the equipment. Damages were sought for the failure of the defendant to pay the amount stipulated, and the court rendered judgment for the plaintiff.

From the finding of facts, it appears that July 21st, 1926, the plaintiff, through its attorney, communicated with the manager of the defendant company and threatened, because of the failure of Doody to make necessary payments, to remove its equipment from a job in New Haven on which Doody was then erecting steel for the defendant; that the equipment was necessary for the proper completion of the work; and that, at the suggestion of the plaintiff's attorney, the manager of the defendant called the manager of the plaintiff upon the telephone, and agreed with him to secure the payment of the rental of the derrick and engine in the amount of $685.84 to June 1st on the New Britain job, and from that date forward at the rate of $65 a week. The plaintiff insisted that the agreement be reduced to writing, and, thereafter, on July 22d, the

defendant wrote to the plaintiff a letter and sent a copy thereof to the plaintiff's attorney, stating that it confirmed the telephone arrangement made between the parties whereby "in the event that the Doody Company is not able thru other channels to carry out their purchase agreement with the Bronx Company we would secure the latter for rental of the derrick and engine in the amount of $685.84 for rental to June 1st on the New Britain job and from that date forward at the rate of $65 per week." The trial court has found that as a result of the agreement and relying thereon, the plaintiff did not remove its equipment, and that the defendant continued to use the same as before and secured the benefit thereof. The court concluded that the telephone conversation of July 21st confirmed by the letter of July 22d constituted a complete contract between the parties.

The appellant attacks this conclusion and claims that the arrangement was not a completed contract but was a mere offer subject to the approval of the plaintiff's attorneys, and has asked various corrections of the finding, and certified portions of the evidence in connection therewith. An examination of this evidence discloses that there was direct testimony to the effect that the parties entered into a definite agreement in the telephone conversation that the defendant would assume responsibility for the payment of the rentals then due or which might accrue thereafter as long as the equipment was used on its work. In view of this evidence, we cannot say that the court was in error in finding that there was a complete agreement between the parties, and that the arrangement reached in the telephone conversation of July 21st and confirmed in the letter of July 22d was not a mere offer subject to the approval of the plaintiff's attorneys. These facts were neither admitted nor undisputed but

were facts upon which the evidence was in dispute, and no correction of the finding can be made upon these points which will benefit the appellant. *Spelke* v. *Shaw*, 114 Conn. 272, 281, 155 Atl. 715.

The appellant further contends that even if there was a binding contract between the parties, it was a conditional guaranty and the plaintiff could not recover thereunder without proving that it had exhausted its remedy against the principal debtor, Doody. A contract is to be construed according to what is fairly to be assumed to be the understanding and intent of the parties. For the purpose of discovering that intent, their situation and the circumstances connected with the transaction may be considered and their language interpreted with the help of that evidence. *Bartholomew* v. *Muzzy*, 61 Conn. 387, 393, 23 Atl. 604; *Finnucan* v. *Feigenspan*, 81 Conn. 378, 381, 71 Atl. 497.

The facts found fully justify the trial court's conclusion that the agreement upon the part of the defendant was an absolute undertaking to pay the amount specified in case the Doody Company failed to carry out its purchase agreement with the plaintiff. " 'A guaranty is a collateral undertaking to pay a debt or perform a duty, in case of the failure of another person, who is in the first instance liable to such payment or performance.' " *Ball Electric Light Co.* v. *Child*, 68 Conn. 522, 525, 37 Atl. 391. "The contract to indemnify is an original undertaking to save the indemnitee harmless against loss or damage of a specified character which may happen in the future." *Wolthausen* v. *Trimpert*, 93 Conn. 260, 265, 105 Atl. 687. "It is often difficult from the mere words in which a promise is made to determine whether any credit was given to a third person, and the undertaking therefore collateral to the engagement or liability

of such person, or whether it was a wholly independent and original undertaking.  In such cases courts must rely upon the circumstances of each particular case, and its general features, in order to ascertain the intention of the parties, and how they viewed it, where it is doubtful whether it was a contract of suretyship or guaranty, or an original undertaking. . . . If a promise is on a sufficient consideration moving between the immediate parties to it, and from which the promisor is to derive a benefit, in view of which the promise is made, it then becomes a new and independent contract existing entirely between the immediate parties to it." *Reed* v. *Holcomb,* 31 Conn. 360, 363, 364. "Where the inducement is a benefit to the promisor which he did not before or would not otherwise enjoy, and the act is done upon his request and credit, such promise is an original undertaking." *Smith* v. *Delaney,* 64 Conn. 264, 275, 29 Atl. 496.

The undertaking of the defendant was not to guarantee that Doody would carry out his conditional sales agreement with the plaintiff, but was an undertaking upon a sufficient consideration to secure the payment of the rent of the equipment while used in connection with defendant's work.  Such an undertaking is not a collateral agreement or guaranty but a primary obligation, and the court did not err in concluding that the plaintiff was entitled to proceed directly upon the contract without showing that it had exhausted its remedies against Doody.  The validity of this conclusion is not affected by the conclusion of the court that the agreement in question was an absolute guaranty. Whether the agreement be regarded as an independent one or as an absolute guaranty, the plaintiff is entitled to proceed to enforce it without first exhausting its remedy against Doody.

On July 23d, 1926, the attorneys for the plaintiff

wrote to the defendant referring to the telephone conversation and the letter of July 22d, 1926, stating that unless they received $1285.84, the balance of the purchase price of the derrick, less a payment of $250 received from the defendant, which represented the entire balance due from it to Doody, both might expect to stand suit. It is claimed that by this letter, the contract made the day before was repudiated. The letter refers to the balance due upon the order for $1535.34 upon which the first count of the complaint is based. What indebtedness of Doody to the plaintiff that order represented does not appear. The agreement upon which this suit is brought is apparently for a different subject-matter, namely, the rent for the use of the derrick which was due and would become due in case the conditional sales agreement was not carried out. The letter contains no reference to this agreement. An intent to repudiate it could rest only upon a possible inference. In *Wells* v. *Hartford Manilla Co.,* 76 Conn. 27, 34, 55 Atl. 599, we quoted from an English decision to the effect that an anticipatory repudiation must consist in " 'a distinct and unequivocal absolute refusal to perform the promise.' " And we also said (p. 37): "The suspicion or belief that the Manilla Company would not call for its entire order could only furnish the foundation for the inference, more or less strong, that the statement of the company, it would not take more pulp than it could use, would in the end result in a breach of the contract. To use this inference of a probable future breach as the equivalent of a present, absolute, unequivocal renunciation of the contract, or refusal to abide by it, is plainly without justification." See *Yaffe* v. *Glens Falls Indemnity Co.,* 115 Conn. 375, 378, 161 Atl. 521; *Wonalancet Co.* v. *Banfield,* 116 Conn. 582, 165 Atl. 785. The letter of July 23d is not such a clear and unequivocal renuncia-

tion of the contract sued upon as to constitute a repudiation of it.

There is no error.

In this opinion the other judges concurred.