CLAIR O. DORNE *v.* ELIZABETH N. WILLIAMS, EXECUTRIX (ESTATE OF HARRIET C. WILLIAMS)

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued June 4—decided July 21, 1953

*John W. Joy,* for the appellant (plaintiff).

*Charles V. James,* for the appellee (defendant).

O'SULLIVAN, J. The plaintiff instituted this action to recover one-half of the cost of repairs alleged to have been made by him to real property of the defendant's decedent. The court rendered judgment for the plaintiff, fixing damages at $1529.36 instead of the $6570.50 he claimed. The court further adjudged that the $1529.36 be liquidated by the plaintiff's retaining and applying against the judgment indebtedness the monthly rental of $30 payable by the plaintiff under the provisions of a long-term lease entered into by him and the defendant's decedent. From the foregoing judgment the plaintiff has appealed to this court.

The finding, with such corrections as are warranted, recites the following facts: The defendant is the executrix under the will of Miss Harriet C. Williams, who, on June 5, 1949, died in Florida at the age of seventy-five. For many years prior to her death Miss Williams had owned, at Crescent Beach in the town of East Lyme, a tract of land upon which stood a three-story house known as the Old Homestead and, to its rear, a two-story building formerly used as a garage but later remodeled into two apartments. The homestead was divided into a northerly and a southerly apartment, each consisting of six rooms. During the summer seasons, Miss Williams was accustomed to occupy the southerly apartment. The homestead was almost fifty years old and was pretty much run-down. It was of frame construction with shingled sides and roof but without interior

sheathing or plastering. The remodeled garage was of similar construction.

On September 19, 1947, the plaintiff obtained a written lease of the northerly apartment in the homestead and of the two apartments in the rear building for a term of ten years. It fixed the rent at $30 a month and gave the plaintiff the right to sublet. During the preceding summer, Miss Williams had been annoyed by water leaking into her own apartment. At the time of executing the lease, she talked to the plaintiff about this condition and the need for temporary repairs. The subject was again discussed in the summer of 1948 when she returned from her winter home in Florida. She then consented to the plaintiff's getting estimates for repairs. Thereafter, he showed contractors through the property and told them what he would like to have them do. The lowest estimate approximated $12,000. When Miss Williams learned of this figure, she decided not to have the work done. Being again plagued by leaks during the same summer, she made up her mind to put a new roof and siding on the homestead. Once more she talked the matter over with the plaintiff, suggesting that he do the work and that each pay one-half of the cost. The plaintiff protested that this was not fair to him under his existing lease. He would agree to the proposition, however, if Miss Williams would give him another lease, similar in all respects to the 1947 lease, but with the added provision that he could renew it under the same provisions and conditions for an additional term of ten years. This being agreeable to Miss Williams, a new lease on these terms, superseding the existing one, was executed on September 18, 1948.

On the same date, Miss Williams and the plaintiff signed a written agreement as set forth in the foot-

note.[1] The agreement and the lease were drafted by the plaintiff. Before she signed, Miss Williams examined both instruments and stated that they correctly covered her agreements with the plaintiff. Within a few hours thereafter she left by train for Florida. On the way to the railroad station she said that she intended to sell a piece of property in Florida to pay for her share of the repairs. Because of her death during the following June, she never returned to Connecticut.

After Miss Williams had left for the south, the

---

[1] "MEMORANDUM OF AGREEMENT, Made and Entered into this 18th day of September, A.D. 1948 by and between HARRIET S. WILLIAMS of St. Petersburg, Florida and CLAIR O. DORNE of Hartford, Connecticut, WITNESSETH:

"WHEREAS the parties hereto have this day executed a lease pertaining to the northerly one-half of a house on Washington Avenue, Crescent Beach, in the Town of East Lyme, Connecticut, known as The Homestead, and

"WHEREAS the parties are desirous of entering into an Agreement regarding repairs to be made to said premises, and the cost of such repairs,

"NOW, THEREFORE, for and in consideration of the Execution of the above described lease and for and in consideration of the mutual covenants hereinafter contained, the parties do hereby agree as follows:

"1. The said Dorne shall make such repairs as are necessary to the premises, including new roof, siding, painting, new steps, new water system and such other repairs as are deemed necessary by the said Dorne.

"2. The cost of such repairs shall be shared equally by both parties.

"3. On or before the first day of July in each year, the said Dorne shall submit to the said Williams, a list of all of the repairs and the cost of repairs which have been made during the preceding year.

"4. The said Williams agrees to pay for her share of the repairs by allowing the said Dorne to apply the monthly rentals of Thirty (30) Dollars each month, as provided in the lease, on account of such repairs. The said Dorne is hereby authorized and directed not to pay such rentals to the said Williams during any month when there is a balance due from the said Williams on account of her share of the above mentioned costs of repairs, but he is authorized and directed to withhold payment of said rentals and to apply them on account of repairs as provided herein."

plaintiff began to have work done on the two build-ings. He had new roofs and sidings placed on both, and he screened the windows and doors. In the home-stead, partitions were moved, doorways changed, new rooms finished off, rubber tile flooring laid in sec-tions, the interior painted and papered, and cellar walls and hatchways rebuilt. He also installed in it the following items: new ceilings, wall sheathing and floors, interior trim and baseboards, new copper plumbing, toilets, lavatories, electric wiring, insula-tion in the walls of the northerly apartment, new stair treads and handrails, and a new oil tank with piping laid under the cellar floor. In the building to the rear, a new concrete veranda floor was laid, the building was rewired and painted inside and out, and there were installed new toilets and showers, new interior walls, trim, ceilings, rubber tile flooring, and cabinets. A 500-gallon septic tank with a 200-foot drainage field was built to serve the homestead, and a 300-gallon tank with a 75-foot field the other build-ing. New concrete walks were laid and the grounds were landscaped. A 220-volt electric system was set up and a 200-foot artesian well drilled to provide water for both buildings. A substantial amount of the work, including the drilling of the well, was done after Miss Williams died. It was not established that during her lifetime she knew the nature of the work being done on the property.

Within the time limited by the Probate Court the plaintiff presented to the defendant a claim for $6570.50, with interest. That amount represented one-half of what the plaintiff maintained was the cost of repairs he had made. The claim was dis-allowed in full.

The court found that the total expenditures for repairs made by the plaintiff within the provisions of

his agreement with Miss Williams were $3058.72. The following items were included: Shingling, labor and materials for siding, porch repairs and exterior painting, $1341; shingles, $168; drilling well, $935; plumbing, $461.72; screen materials, $108; screen doors, $45. Judgment was rendered for the plaintiff to recover one-half of that sum.

The plaintiff maintains that the court erred in limiting damages to $1529.36, since the correct amount of recovery, he insists, should have been $6570.50, representing, as that sum does, one-half of the cost of all work done to the entire property. The answer to that claim is found in his agreement with Miss Williams under date of September 18, 1948. What we are bound to regard when examining that instrument is, not the intent that the parties to it may have had, or the intent we think that they ought to have had, but the intent which they expressed in it. *Ives* v. *Willimantic*, 121 Conn. 408, 411, 185 A. 427. Their intent is to be determined from the language used, in the light of their situation and of the circumstances connected with the transaction. *Bronx Derrick & Tool Co.* v. *Porcupine Co.,* 117 Conn. 314, 318, 167 A. 829. A fair interpretation of the language in this agreement is, first, that Miss Williams and the plaintiff intended that the contemplated work should consist of repairs as distinguished from capital changes or improvements, and, second, that the repairs were to be made only to the homestead. We discuss each of these briefly.

There is nothing to suggest that the parties had a technical or special meaning in mind when using the word "repairs" in the agreement. Under such circumstances, it must be given its ordinary meaning. *Ross* v. *Protective Indemnity Co.,* 135 Conn. 150, 152, 62 A.2d 340; *Perkins* v. *Eagle Lock Co.,* 118 Conn.

658, 663, 174 A. 77. That meaning is the restoration to a sound or good state after decay, dilapidation or injury. Webster's New International Dictionary (2d Ed.); *Littlejohn* v. *Elionsky,* 130 Conn. 541, 543, 36 A.2d 52. The repetition of the word throughout the written agreement is significant. It appears therein eleven times. We cannot assume that the frequency of its use was accidental. On the contrary, there is every indication that it was intentional. Since the word has a definite meaning in common usage, it must be given that meaning in interpreting the agreement. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 16, 31 A.2d 393. Nor is the meaning to be varied because, in one of the paragraphs, Miss Williams and the plaintiff referred to "repairs" as including "new roof, siding, painting, new steps, [and] new water system." While the finding does not expressly mention the existing conditions which called for these items, the court might well have found that only by making the replacements agreed to by the parties could it be said that the conditions were repaired. The court was correct in limiting the plaintiff's recovery to repairs.

The court was further correct in interpreting the agreement so as to preclude recovery for any repairs made to the building in the rear. The agreement recited that "the parties hereto have this day executed a lease pertaining to the northerly one-half of a house . . . known as The Homestead" and that they "are desirous of entering into an Agreement regarding repairs to be made to said premises." The significance of this language lies in its specific reference to the homestead and in the absence of any reference to the building in the rear. The word "said" in the expression "said premises" is a word of reference to something previously mentioned. *Her-*

*shatter* v. *Colonial Trust Co.,* 136 Conn. 588, 592, 73 A.2d 97. That "said premises" refers to the entire building known as The Homestead rather than to the northerly apartment which the plaintiff leased seems obvious from the situation of the parties and the circumstances surrounding the transaction. The factor prompting Miss Williams to act was the repeated inconvenience experienced from the leaks in her part of the house. It would hardly be reasonable to believe that her purpose was to neglect herself and provide only for her lessee. We further add that if there could be any doubt that the construction of the agreement adopted by the trial court was correct, for the reasons we have stated, its conclusion is confirmed by the application of the principle that, when two meanings are possible, an agreement is to be construed against the one who drew it. *Ciarleglio* v. *Benedict & Co.,* 127 Conn. 291, 293, 16 A.2d 593; *Lyman* v. *Stevens,* 123 Conn. 591, 596, 197 A. 313.

The court found that $3058.72 was the cost of the various items incorporated in the finding. Whether the plaintiff expended any further sums for repairs on the homestead remains in doubt. The reason for this is that the plaintiff failed to keep account of the expenditures which he made. The labor and materials used in the work could not, at trial, be traced to one or the other building or to the items of work into which they went. Materials charged for in bulk were used, as the court found, partly for repairs and partly for new construction; workmen, paid by the day, spent undetermined parts of their working days on repairs and other parts on new work. If the plaintiff is not being completely reimbursed for Miss Williams' half of the cost of the repairs to the homestead, it is because he failed to establish his damage by a fair preponderance of the evidence. *Vander-*

*kruik* v. *Mitchell*, 118 Conn. 625, 628, 173 A. 900.

The plaintiff assigns error in the court's adjudication of the manner in which his judgment is to be satisfied. He has no legal cause to complain. The agreement set forth the method by which Miss Williams' share of the cost of repairs should be liquidated. This was to be accomplished by the plaintiff's applying against any indebtedness of hers the $30 monthly rent to which she was entitled under the lease. As pointed out by the court, the plaintiff has paid no rent, thereby acknowledging by his conduct that his suit is not one for total breach and that the agreement still remains in effect. See 12 Am. Jur. 966, § 389. Since he is entitled to recover only that for which the agreement provides, the judgment was correct in restricting the manner of his reimbursement to that which he and Miss Williams had specifically prescribed.

There is no error.

In this opinion the other judges concurred.