## LINSTROTH WAGON CO. v. RIVES.

No. 13517—Opinion Filed March 11, 1924.

Rehearing Denied June 17, 1924.

**1. Frauds, Statute Of — Verbal Sale of Goods.**

A verbal contract for the sale of merchandise to be delivered in the future, where no part of the consideration is paid, and no part of the goods delivered, is within the statute of frauds, is invalid, and cannot be enforced by either party, nor can an action for damages be predicated on a breach thereof.

**2. Same—Letters Insufficient as "Memorandum."**

Letters offered in evidence, showing a correspondence between plaintiff and defendant wherein they carried on a controversy concerning a certain order for merchandise in which they disagreed as to the time of delivery and payment and the amount of goods sold, and the purchase price thereof, and in which the right of the agent of defendant to give the order as contended by plaintiff was denied, is not sufficient and does not constitute such a memorandum or acknowledgment of the transaction as will take it out of the statute of frauds.

**3. Same—Contracts for Sale and for Manufacture Distinguished.**

A contract for the sale of articles then existing, or such as the seller in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract

LINSTROTH WAGON CO. V. RIVES

for the sale of goods, to which the statute of frauds applies; but if the goods are to be manufactured for the buyer, on his special order, and not for the general market, it is not a contract of sale, but is one for the performance of labor and furnishing material and does not come within the statutes of fraud.

**4. Same—Question for Jury.**

The question of whether a given transaction is one of sale of goods or one involving the performance of work and labor and the furnishing of material, which ultimately results in the manufacture of a certain article for delivery to the contracting party, is a question of fact for the determination of the jury, under proper instruction by the court.

**5. Same—Erroneous Rulings.**

The action of the court in this case, in ordering the petition of plaintiff amended to conform to the proof, upon the theory that the transaction as proven was a sale of merchandise, and not a contract for labor performed and material furnished, and that same was not such a transaction as came within the statute of frauds, and in directing a verdict for the plaintiff, was reversible error.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by J. R. Rives against the Linstroth Wagon Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

Dean & Burris and Richard A. Jones, for plaintiff in error.

Date Crawford, J. M. King, and John P. Crawford, for defendant in error.

Opinion by JONES, C. This suit was instituted by J. R. Rives, plaintiff, against Linstroth Wagon Company, defendant, in the district court of Pontotoc county, Okla., to recover $3,800, the value of a carload of wagon felloes. Plaintiff alleges that on or about October 1, 1920, the defendant, through its agent, one Roach, entered into an oral contract with the plaintiff whereby he was employed to split, cut, and saw a carload of bois d' arc wagon felloes at an agreed price of $15 per set for long felloes and $8 per set for short felloes, and that according to the terms of said contract, he provided 200 sets of long felloes and 100 sets of short felloes, and was ready to deliver same aboard the cars at Stonewall, Okla., at which time, under the terms of the contract, he was to receive pay for same. The defendant files its answer in the nature of a general denial, and denies generally and specially each and every allegation set out in said petition and denies that it is indebted to the plaintiff in the sum of $3,800 or in any other

sum. The case was called for trial on November 17, 1921, a jury was called, impaneled, and sworn to try the case, and at the close of the evidence on the part of the plaintiff, both plaintiff and defendant rested.

Counsel for defendant interposed a demurrer to the testimony offered by the plaintiff for the reason that it was insufficient to entitle plaintiff to recover against defendant, and for the further reason that this being an oral contract for purchase of goods, wares, and merchandise for price in excess of $50, no part of the purchase price having been paid, and no part of the wagon felloes or goods having been delivered and accepted by defendant, said transaction is within the statute of frauds. The demurrer was overruled by the court and exceptions allowed. Counsel for defendant then made the contention that there was a departure from the pleadings as the cause of action pleaded was a contract for work and labor, and the proof manifestly shows a contract for the purchase of personal property in excess of $50, which was also overruled by the court, and the court on its own motion directed that the record show that the petition stand amended to conform to the proof, which order was also objected to by the defendant; whereupon counsel for plaintiff moved the court to instruct a verdict for the plaintiff for the amount sued for, which motion was granted. Motion for a new trial was filed and overruled, from which order and judgment the defendant appeals. The appellant assigned eight specifications of error, but urges specially the error of the court in sustaining the motion of defendant in error, and in directing the jury to return a verdict for the defendant in error, plaintiff below, for the amount sued for.

And, second, that the court was in error in refusing to instruct the jury to find for the appellant, defendant below, for the reason that the contract or agreement sued on comes within the statute of frauds.

The record discloses that the appellant through its agent, H. B. Roach, had formerly had a transaction with the appellee whereby it purchased a shipment of wagon felloes similar to those involved in this controversy, and that some correspondence had passed between the appellant and appellee relative to other orders, and that on or about October 1, 1920, the said Roach seems to have given an oral order, according to the allegations of the appellee in his petition, for 200 sets of long felloes at $15 per set and 100 sets of short felloes at $8 per set. The evidence offered by the plaintiff in support of his contention consisted of the testimony of the plaintiff and Roach and several letters from the appellant received by

the appellee concerning the transaction after the trade was made on October 1st. The first letter received was on November 5, 1920, which is as follows:

"Mr. J. R. Rives,
"Stonewall, Okla.

"Dear Sir:

"Owing to conditions at present, we will have to ask you to withhold the shipment on our car of Bois d'arc felloes until further notice as we are unable to take care of same at this time.

"We do not want to cancel this order and hope to be able to take care of same in a very short time.
"Yours very truly,
"Linstroth Wagon Company."

Which was in response to a letter written by the appellee notifying the appellant that he had begun to cut the felloes and would have same ready for shipment in a short time. The other letters which followed showed to be an effort to reach some adjustment or agreement as to when the shipment should be made, and how same should be paid for and the latter portion of the correspondence involves a controversy as to the price to be paid. The appellant contends that they had not agreed nor had they authorized their agent to agree to pay $15 per set and $8 per set, respectively, for the felloes as alleged by the plaintiff, and took the position in the letters that they expected to pay the same price for this shipment that they had formerly paid for the shipment of similar material, purchased from the appellee, which was $10 and $6 per set. The appellant contends that the contract together with the letters introduced in evidence are not sufficient to establish a valid contract, and clearly shows that the contract relied upon is void for the reason that it is prohibited by the statute of frauds.

Section 5034, Comp. Stat. 1921, in the 4th paragraph thereof, provides that the following contracts are invalid unless the same or some note or memorandum be in writing or subscribed by the party to be changed, or his agent:

"An agreement for the sale of goods, chattels, or things in action, at a price not less than $50 unless the buyer accept or receive part of such goods and chattels, or the evidence or some of them, of such things in action, or pay at the same time some part of the purchase money. * * *"

Appellant also cites the case of Crabtree v. Eufaula Cotton Seed Oil Co., 32 Okla. 465, 122 Pac. 664, wherein the court said:

"A verbal contract for sale of fifty tons of cotton seed meal at $24.50 per ton and

360 tons cotton seed hulls at $5.50 per ton to be delivered in the future where no part of the consideration is paid and no part of the goods was delivered is within the statute of frauds. Comp. Laws 1909, section 1089 (being section 5034, Comp. Stat. 1921), is invalid and cannot be enforced by either party nor can a claim for damages be predicated on a breach thereof."

If the transaction with which we are here dealing was a verbal contract of sale then we would be inclined to the opinion that it comes within the statute of frauds and invalid, but the question of when a transaction of this nature is a contract of sale or a contract for labor and material, is a question about which there has been much controversy and in many instances is very difficult of determination, as shown by the following citations, 23 R. C. L. art. 39, page 1222:

"The distinction between contracts of sale and contracts involving the performance of work and labor in the manufacture of an article resulting ultimately in the transfer of the article is chiefly exemplified in cases in which the question to be determined is whether the contract is one for sale of goods or merchandise within the statute of frauds, which it is well settled includes executory contracts of sale. It was established in this country at an early date and has been consistently maintained that a contract for the manufacture of an article or where work and labor for its production are a part of the contract, though ultimately resulting in the transfer of the article when completed, is not necessarily a contract of sale within the meaning of the provision, but may be one for work and labor, and the fact that a price is agreed on for the completed article is immaterial. The fact, however, that work and labor are to be performed on the article, the transfer of which is contemplated by the agreement, will not necessarily prevent the transaction from being deemed a contract of sale. The determination of the ultimate question whether a particular agreement of this character is a contract of sale has led to the adoption of various rules in different jurisdictions whereby to distinguish such contracts from contracts for manufacture or for work and labor, and there appear to be substantially three distinct views on the applicability of the statute, which, for convenience, are generally designated as the English, the New York, and the Massachusetts rules, as represented by the decisions of their respective courts. As may be expected the result of cases very similar in their facts and circumstances have not been in accord, and it has been said by the courts that there few legal topics perplexed by a greater number of irreconcilable opinions than the question of law involved in this inquiry. In England the more recent cases conflict, in a very marked degree, with

those of an earlier date; and in this country it is difficult to find any two judicatures that, upon the point in question, have entirely concurred."

There seems to be three distinct lines of opinion on this question, designated as the English rule, the New York rule, and the Massachusetts rule. A discussion of each is found in articles 40 and 41, 23 R. C. L., under chapter on Sales, pages 1224 and 1225, and after a careful consideration of these divergent authorities we are inclined to the opinion that the rule announced by the Massachusetts court is the more reasonable and just, wherein that court, speaking through Chief Justice Shaw (Mixer v. Howarth, 32 Am. Dec. 256) 23 R. C. L., sec. 41 pg. 1224, said:

"A contract for the sale of articles then existing, or such as the seller in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, it a contract for the sale of goods, to which the statute of frauds applies; but if the goods are to be manufactured for the buyer. on his special order, and not for the general market, it is not a contract of sale."

The New York rule is to the effect:

"That an agreement for the sale of any commodity not in existence at the time, but which the seller is to manufacture or put in a condition to be delivered is not a sale within prohibition of the statute of frauds."

The author states in this same article, art. 41:

"And though it may be said that the Massachusetts test seems to meet with the greater commendation, the tendency of the courts is to decide the case before them according to precedents in deciding cases rather than by general rule."

We think under this rule that the question of whether or not a given contract or agreement was a contract of sale or a contract for labor and materials employed for the purpose of cutting a specific article or preparing a certain commodity for the benefit of the purchaser is generally a question of fact, and ordinarily a question for the determination of the jury.

Our court in the case of Waldock v. First National Bank of Idabel, 43 Okla. 348, 143 Pac. 53, in passing upon a similar question involving the question as to when the statute of frauds will apply, held:

"The evidence on the part of plaintiff tends to show that the money in question was advanced to R. solely on the credit of W.; that R. was working for W. at the time, and a settlement was pending between them; that W. requested plaintiff over the telephone to advance the money to R. and he would sign a note for same; that plaintiff relied upon said promise and extended the credit solely to W. Held, that whether or not the promise of W. was an original or a collateral promise, depended largely upon the intent of the parties, and was a question of fact to be determined by the jury."

We are inclined to the opinion that the trial court was in error in refusing to permit the appellant, defendant in the lower court, to show that the wagon felloes in controversy were a common merchantable commodity in Pontotoc county, Okla.. This evidence, together with the other evidence brought out on cross-examination of the plaintiff, Rives, and the advertising matter found upon his letter heads which he used, showed that he was engaged as a saw miller, wagon builder, corn and flour mills, blacksmith and woodwork, wagon yard, furnishing material for wagons and buggies, etc., would have been sufficient to raise the issue as. to whether or not he was engaged in the business of manufacturing wagon felloes as a general business and whether or not he carried such material in stock and had a general market for the same, or whether this was a special order such as might be construed to be a contract for labor and material, which would have been an issue of fact for determination of the jury and would have determined the question of whether the contract sued upon was a contract of sale or for labor and material, producing the manufactured article for the benefit of the purchaser, and we think it a question which should have been submitted to the jury under proper instructions, to the effect that should they find from all the facts and circumstances in evidence that the agreement constituted a sale, in such event the same would come within the statute of frauds and the plaintiff would not be entitled to recover; on the other hand, should they find that it was a contract for labor and material, in such event they should find for the plaintiff. For the reasons heretofore assigned, we think the case should be reversed and remanded for a new trial, and so recommend.

By the Court: It is so ordered.