## KANSAS FLOUR MILLS CORP. v. DREYFUS BROS., Inc.

No. 22879. Dec. 11, 1934.

Withdrawn, Corrected, Refiled, and Rehearing Denied Jan. 22, 1935.

Everett C. Mead and Harry A. Gilford, for plaintiff in error.

J. F. Lawrence, Travis I. Milsten, and James D. Johnston, for defendant in error.

RILEY, C. J. This is an appeal from a judgment for defendant in an action commenced by plaintiff in error.

The facts which are not disputed are: The Alva Roller Mills is a mill operated by plaintiff at Alva, Okla. On July 6, 1928, plaintiff and defendant entered into a written contract whereby plaintiff sold to defendant 420 barrels of flour, two grades, one grade known as Sun flour at $6.50 and the other Big A flour at $6.10, f. o. b. car at Alva, with freight allowed to Tulsa, Okla., subject to an allowance or commission of 20c per barrel, as provided by a prior written agreement; shipment to be made on specifications to be furnished by defendant.

On July 10, 1928, the parties entered into an oral agreement whereby plaintiff sold defendant 5,000 barrels of flour, to consist of Sun flour at $6.40 per barrel and Big A brand at $6, or net price after allowing the discount or commission (or $6.20, for Sun brand and $5.80 for Big A), the flour to be shipped as and when directed by defendant before January 1, 1929, on specifications as to amount of each brand; flour to be in cotton bags, 48 lbs. basis, with differential allowed for bags of smaller capacity.

This oral contract was afterwards reduced to writing and signed by plaintiff, but

defendant never did sign or confirm same in writing.

Plaintiff contends that the oral contract was thereafter validated so as to remove it from the provisions of the statute of frauds (St. 1931, sec. 9455), by the delivery to, and acceptance by, defendant of ten barrels of flour, and the payment therefor by defendant. This defendant denies.

It appears that a minimum carload of flour is 210 barrels. That is, if less than 210 barrels is shipped in a car, the amount of freight charges is the same as though the car contains 210 barrels. Shortly after the written contract was entered into defendant gave plaintiff directions specifically to ship 220 barrels of flour, which was done.

Defendant received, accepted, and paid for same. Thereafter and on August 3, 1928, defendant ordered a further shipment of flour. The evidence is in conflict as to how much was ordered shipped. That of plaintiff is that defendant directed plaintiff to ship 210 barrels; that of defendant is that specifications and directions as to the amount of flour was 200 barrels, or enough only to complete the written contract for 420 barrels. The conversation was by telephone and there were no written specifications, so that the amount ordered shipped in the last car was a disputed question of fact for the jury. However, plaintiff did ship to defendant in the last car 210 barrels; not all of it, however, was Sun brand and Big A brand; 30 barrels thereof being Snowflake brand. There were also 30 barrels of Snowflake in the first car shipped. It appears that at that time there was no objection to the substitution of Snowflake for one of the other brands.

When the last car was shipped plaintiff sent defendant an invoice purporting to show that the shipment was made under the two contracts, one designated as No. 193, dated 7/5/28, and the other No. 180, dated 7/10/28. All the flour in this car was invoiced at the prices under the written contract of July 5, except 10 barrels which were invoiced at the price of the like grade covered by the oral contract, which was ten cents per barrel higher. When the flour arrived in Tulsa defendant accepted same and paid for it at the prices stated in the invoice.

The evidence of plaintiff also shows that on August 3, 1928, plaintiff wrote and mailed defendant the following letter:

"Dreyfus Brothers,
"Tulsa, Oklahoma.

"Dear Mr. Dreyfus:

"Following telephone instructions given us today by Mr. Goldman, we have entered for prompt shipment, car of flour per specifications attached. Please check these directions carefully, advising us immediately of any errors.

"200 barrels of these specifications are being applied on your purchase of July 6th, completing the contract, and the other ten barrels on your purchase of July 10th.

"Thanking you kindly for these directions, we remain

"Very truly yours,
"The Alva Roller Mills.
"Manager."

Defendant, however, denied that this letter was ever received, and its evidence is in substance that when defendant accepted and paid for the last carload of flour they did not know that the extra ten barrels of flour was applied or sought by plaintiff to be applied upon the oral contract of purchase of July 10, 1928.

Defendant refused to confirm in writing the oral contract, and refused to direct further shipments, and, though not denying the oral contract, refused to perform.

The basis of plaintiff's claim in its petition is that immediately after the oral contract it purchased in the open market sufficient wheat out of which to manufacture the 5,000 barrels of flour. That it was necessary so to do in order to protect itself against subsequent raise in the price of wheat, and consequent loss in fulfilling its contract. That instead of a raise in the market price of wheat there was a decline; that it was necessary that plaintiff hold the wheat in readiness to manufacture the flour until January, 1929, which it did, and at which time the market price of wheat was much lower, with a corresponding decline in the market of flour of $1.01 per barrel, whereby it suffered a loss of $5,039.90. To recover this amount with interest this action was commenced.

Plaintiff's right to recover depends, first, upon whether its contract with defendant was one of sale or a contract for work and labor. If the latter, it was not necessary that the contract be reduced to writing and signed by defendant. If not a contract for work and labor, then upon whether the oral contract relied upon was in fact rendered

effective by partial performance, that is, by delivery and acceptance of a part of the flour contracted for, that is, the ten barrels.

Receipt of this letter was positively denied by defendant, and it cannot be said as a matter of law that defendant was bound by the statements therein made when he afterwards paid for the extra ten barrels of flour.

Defendant asserts that, although it knew that the two cars of flour contained 430 barrels, or ten barrels more than was covered by its contract of July 6, it was accepted and paid for under a custom then obtaining in the flour trade to the effect that where a buyer ordered a quantity of flour a few barrels less than a minimum carload, it was the custom for the seller in filling the order to include enough flour to make up a minimum carload, and for the buyer to accept and pay for the extra amount, not necessarily at the price set in the order of contract of purchase, but at the market price prevailing at the time of delivery. The explanation of the reason for this custom was that the party liable for the freight would thereby secure the advantage of the amount of freight which would thus be saved, the freight being the same up to a minimum carload of 210 barrels. The trial court, over the objection of plaintiff, permitted defendant to introduce evidence tending to show the existence of such a custom to the extent of "a few barrels."

It is first contended that the contract relied upon was not one of sale, but was one for work and labor, and, therefore, not required to be in writing.

Plaintiff cites Linstroth Wagon Co. v. Rives, 100 Okla. 18, 226 P. 1057, wherein it is held:

"A contract for the sale of articles then existing, or such as the seller in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods, to which the statute of frauds applies; but if the goods are to be manufactured for the buyer, on his special order, and not for the general market, it is not a contract of sale, but is one for the performance of labor and furnishing material and does not come within the statutes of fraud."

It is asserted that under the Oklahoma rule as there laid down, this contract is clearly a contract for work and labor. Therein it is pointed out that the rule under which to determine whether contracts of this nature are contracts for work and labor or contracts of sale is by no means uniform, and that there is one rule known as the English rule, one known as the New York rule, and one known as the Massachusetts rule. Under the English rule the contract here involved would be one of sale. Under the New York rule it would be one for work and labor. The Massachusetts rule appears to be that quoted above and adopted in Linstroth Wagon Co. v. Rives, supra, and is stated by plaintiff to be the Oklahoma rule. Thereunder it is apparent that the question of fact, whether the articles are then existing, or are such as the seller in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is often the deciding factor in a disputed case. When these questions or either of them arise, it is for the jury, under proper instructions, to decide. Such is the instant case. Plaintiff contended that it never did manufacture the Sun and Big A brands of flour for the general market prior to July 10, 1928, but had manufactured such brands exclusively for defendant, and under specifications worked out by plaintiff in its laboratory at the suggestion of defendant.

Defendant asserted that the Sun and Big A flour, and particularly the Sun flour, was nothing more nor less than a certain grade of flour long manufactured by plaintiff for the general market under a brand known as "Mistletoe Flour."

The evidence was conflicting as to whether the grade of the Sun flour was the same as that of the Mistletoe brand theretofore manufactured by plaintiff for the general market.

Linstroth Wagon Co. v. Rives, supra, lays down the rule that:

"The question of whether a given transaction is one of sale of goods or one involving the performance of work and labor and the furnishing of material, which ultimately results in the manufacture of a certain article for delivery to the contracting party, is a question of fact for the determination of the jury, under proper instruction by the court."

This could hardly be said to be an exact statement of the law. It would seem that whether, under a given transaction or state of facts, the transaction constitutes a sale of goods or one involving the performance of work and labor and furnishing materials

is a question of law for the court, but where the facts constituting the transaction are in dispute and where the evidence is in conflict, the question then becomes one of fact for the jury. Such was in effect the real holding of this court in the Wagon Company Case, supra. The holding of the court in the body of the opinion is correct, but is apparently not properly reflected in paragraph 4 of the syllabus.

The trial court by appropriate instructions presenting the theory of both parties submitted this controverted question of fact to the jury, and also by special interrogatories. The answers were adverse to plaintiff, and the finding of the jury on this question will not be disturbed.

We, therefore, conclude that under the facts in this case the contract was one of sale rather than one for work and labor and furnishing materials, and to be valid in its inception must have been in writing.

The question of whether or not it was removed from the statute of frauds by delivery and acceptance of a part of the flour remains to be considered.

The trial court by instruction No. 3, after telling the jury that if it should find that the flour was in existence at the time of the alleged contract of July 10th, or was such flour as plaintiff manufactured in the ordinary course of its business for the general market, then the contract would be one of sale and not for work and labor, and invalid because not in writing, unless defendant accepted or received a part of the 5,000 barrels of flour, told the jury:

"In this connection you are instructed that if you find by a preponderance of the evidence that the plaintiff, in accordance with the alleged contract of July 10, 1928, shipped to the defendant any part of said 5,000 barrels of flour, and that the defendant accepted and received the same with the intention that same should be applied upon the alleged contract of July 10, 1928, then such conduct on the part of the defendant constituted an acceptance of a part of the flour in question, which removed the necessity that said contract, if any, should be in writing."

On the question of acceptance the trial court also submitted two special interrogatories to the jury, as follows:

"3. Did defendant receive and accept said 10 barrels of flour with knowledge and consent that it was intended as a part delivery of said 5,000 barrels of flour?

"4. Did defendant receive and accept said 10 barrels of flour and pay for same with the intention that it should be considered as a part fulfillment of said contract or sale of 5,000 barrels of flour?"

The answer to both was "No."

Since there can be no doubt that delivery of the 10 barrels in question was sought to be made by plaintiff under the oral contract, that defendant actually received and paid for same, the only question that could be involved was whether the particular 10 barrels of flour were accepted by defendant under the oral contract or under the written contract of July 6th.

In order to satisfy the statute of frauds by delivery and acceptance of goods, chattels, or things in action, or a part thereof, receipt or acceptance must be in pursuance of the particular contract sought to be established.

"A receipt and acceptance under another contract would not be sufficient." 27 C. J. 244-245; Van Boskerck v. Torbert, 184 Fed. 419; Walnut Ridge Mer. Co. v. Cohn, 79 Ark. 338, 96 S. W. 413; Armour v. Freeman Baking Co., 197 Mich. 421, 163 N. W. 896.

The latter was a case where it was claimed by the buyer, who was defendant, that delivery was under an oral contract for the sale of certain lard at a price of 10c per pound, while the seller claimed delivery was made by it under a subsequent contract at the then market price, which was higher. Therein it was said:

"An examination of the briefs and arguments of counsel for the respective parties satisfies us that the pivotal question in the case is whether there was any evidence that delivery was made under the verbal order. The burden lay upon the defendant to prove delivery on the particular contract. We are of the opinion that the record is barren of any evidence to support defendant's claim that delivery was intended by the plaintiff to be upon the verbal order of November and at the contract price. * * *

"The authorities seem to support the proposition that the delivery must have been intended by both parties, to have been made and accepted upon the verbal order, to take the case out of the statute of frauds."

Therefore, both delivery and acceptance must have been under the oral contract of July 10th, in order to validate the contract under the statute of frauds. That is, it must have been the intent of the plaintiff, seller, to deliver under said contract, and also the intent of defendant, buyer, to accept under that particular contract.

There was evidence for plaintiff from

which the jury might reasonably infer that acceptance was under the oral contract. There was also evidence for defendant from which the jury might reasonably infer that acceptance by defendant was under the written contract of July 6th, notwithstanding there were 10 barrels more than enough to fulfill such contract. It was therefore proper for the trial court to submit the question to the jury, and the verdict and finding of the jury is binding for the reason that there is some evidence reasonably tending to support same.

Plaintiff contends that there was error in permitting a witness for defendant to testify that there was a custom in the flour business for the seller to add a "small amount" of flour to make up a carload without the buyer's consent.

The contention is not that general custom could not be shown, but that the custom concerning which the witness testified was not uniform, not definite and not certain, leaving it open to the discretion of one of the parties to determine what would constitute a "small amount."

A number of cases are cited tending to sustain the contention of a general proposition, and particularly where a party is sought to be held liable or released from liability under such a custom.

Such is not the case here. It must be borne in mind that defendant is relying on the alleged custom only as one incident or reason influencing him as to his intent in accepting and paying for the extra ten barrels of flour under the former written contract rather than under the oral contract.

Anything connected with the transaction that would tend to influence defendant as to his intent would seem to be admissible. Even if he merely thought there was such a custom, he might be permitted to testify to that fact as an inducement for him to pay for the additional flour. The same strict rule with reference to proof of a custom when relied upon of itself to bind a party should not be required. Defendant was not relying upon any custom to relieve him from payment for the flour, but was relying upon an alleged custom as affecting his intent and purpose in accepting and paying for the flour. The intention with which a buyer acts is always a material question, and may be shown by acts and conduct as well as circumstances surrounding the transaction involved.

There being no substantial error, the judgment is affirmed.

SWINDALL, ANDREWS, OSBORN, and BUSBY, JJ., concur.